UNITED STATES

v.

Keith R. PAALUHI, 575 94 3382, Gunnery Sergeant (E–7), U.S. Marine Corps.

NMCM 97 00321.

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 17 Aug. 1996.

Decided 28 May 1999.

LT Frank Doherty, JAGC, USNR, Appellate Defense Counsel.

LT Jeffrey K. Van Nest, JAGC, USNR, Appellate Defense Counsel.

Maj Troy D. Taylor, USMC, Appellate Government Counsel.

Before SEFTON, Chief Judge, TROIDL, Senior Judge, and ANDERSON, Appellate Military Judge.

TROIDL, Senior Judge:

A general court-martial with officer members convicted the appellant, contrary to his pleas, of rape, sodomy with a child under the age of 16, and two specifications of indecent acts with a child under the age of 16, in violation of Articles 120, 125, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 925, and 934 (1994). The adjudged sentence includes a dishonorable discharge, confinement for 10 years, and reduction to pay grade E–1. The convening authority approved the sentence as adjudged.

We have carefully reviewed the record of trial, the appellant's assignments of error, and the Government's response, and considered the superb oral arguments of appellate counsel. We conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ.

## I. Background

From 1990 through 1996, the appellant's daughter [N], who was 15 years old in 1996, had lived either with the appellant in California or Hawaii, or in Hawaii with her mother, the appellant's ex-wife, or the appellant's parents. Prosecution Exhibit 4. On Saturday, 30 March 1996, [N's] sister gave her a journal as a gift. *Id.* During the early morning hours of 31 March 1996, [N] made an entry in her journal in which she recounted how she felt after having just had sexual relations with her father. *Id.* On or about 3 April 1996, [N's] mother read the journal and reported her findings to the appropriate authorities. *Id.*; Record at 161. Ms. Kim Holmes, a child sexual abuse investigator with the Hawaii Department of Human Services, Child Protective Services, was notified of the report on 3 April 1996. Record at 116. As was customary, she contacted the responsible agency with criminal investigative jurisdiction, in this case the Naval Criminal Investigative Service (NCIS). Record at 124, 161. NCIS Special Agent (SA) Deborah Russell arranged for an interview of [N] to take place the next day at the Child Advocacy Center, a facility that had rooms appropriate for the interview of children in a non-threatening environment. Record at 124–125, 174. The next morning, [N], her mother, and her younger sister traveled to the Child Advocacy Center, where they were introduced to Ms. Holmes, SA Russell, and another NCIS agent. Record at 128, 174–175. Ms. Holmes then interviewed [N] in a private room, telling [N] that the interview was being watched and videotaped by SA Russell and the other NCIS agent, who were located behind a two-way mirror. Record at 127, 175. Ms. Holmes subsequently referred [N] to Mrs. Lynn Kux, a Clinical Social Worker, who met with [N] approximately seven times during the period 1 May through 22 July 1996. Record at 82, 83.

The appellant was placed in pretrial confinement on 5 April 1996. Charge Sheet. Captain [K] was subsequently assigned as the appellant's detailed defense counsel. Record at 392, 398. During pretrial preparation of the appellant's case, Captain [K] contacted Lieutenant Hill, a Navy Medical Ser-

vice Corps officer and clinical psychologist assigned to a local military medical clinic. Record at 399, 421, 424. Captain [K] testified that, at the time he contacted LT Hill, he anticipated presenting only a case in sentencing and was looking for an expert to provide testimony favorable to the appellant. Record at 399. Without requesting that the convening authority or military judge assign LT Hill, or any other mental health professional, to assist the defense, Captain [K] convinced LT Hill to meet with and evaluate the appellant, and advised the appellant to cooperate with LT Hill. Record at 395, 399–400. LT Hill faxed a document entitled "Initial Personal History Questionnaire" (Questionnaire) to the appellant, at the Brig, on 31 May 1996. Appellate Exhibit XV; Record at 386. Included with the Questionnaire was a "Statement of Understanding Regarding Limits of Confidentiality within Military Mental Health Departments" (Statement of Understanding). Appellate Exhibit XV; Record at 388, 394. LT Hill ensured that the appellant had read and signed this Statement of Understanding before she commenced her initial interview of him on 5 June 1996. Record at 388, 394. During the course of their meetings, the appellant admitted to LT Hill that he had been having sex with his daughter [N] over about a five-year period of time, but did not give specific details.[1] Record at 425.

## II. Psychotherapist–Patient Privilege

In his first assignment of error, the appellant asserts that the military judge erred

when, over defense objection, he allowed LT Hill to testify concerning admissions made to her during the course of his psychological evaluation. The appellant claimed, both at trial and on appeal, that his communications to LT Hill were protected by a psychotherapist-patient privilege and that the military judge was incorrect in ruling that the psychotherapist-privilege recognized in Federal practice by the Supreme Court in *Jaffee v. Redmond*, 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996), was not applicable to court-martial proceedings. He argues that the privilege is applicable pursuant to Military Rules of Evidence 101(b)[2] and 501(a)(4),[3] MANUAL FOR COURTS-MARTIAL, UNITED STATES, (1995 ed.).

The Government, noting that the MCM does not recognize a psychotherapist-patient privilege, and citing *United States v. English*, 47 M.J. 215, 216 (1997), argues that *Jaffee* is inapplicable to courts-martial because it was a civil case[4] and that a psychotherapist-patient privilege is "contrary to or inconsistent with" Mil.R.Evid. 501(d), which bars the doctor-patient privilege in courts-martial. The Government also argues that, even if the claimed privilege existed, the appellant waived it when he executed the Statement of Understanding prior to making any admissions to LT Hill.[5]

 A military judge's decision to admit or exclude evidence is generally tested on appeal for an abuse of discretion. *United States v. Sullivan*, 42 M.J. 360, 363 (1995). We will uphold a military judge's findings of

1. LT Hill and the appellant met on 5 and 26 June and on 5 and 30 July 1996. Record at 425.

2. Mil.R.Evid. 101(b) states that:

 If not otherwise prescribed in this Manual or these rules, and insofar as practicable and not inconsistent with or contrary to the code or this Manual, courts-martial shall apply:
 (1) First, the rules of evidence generally recognized in the trial of criminal cases in the United States district courts; and
 (2) Second, when not inconsistent with subdivision (b)(1), the rules of evidence at common law.

3. Mil.R.Evid. 501(a)(4) states that a:

 person may not claim a privilege with respect to any matter except as required by or provided for in: ... (4) The principles of common

law generally recognized in the trial of criminal cases in the United States district courts pursuant to rule 501 of the Federal Rules of Evidence insofar as the application of such principles in trials by courts-martial is practicable and not contrary to or inconsistent with the code, these rules, or this Manual.

4. Although *Jaffee* was a civil action, its ruling as to the psychotherapist-patient privilege has been applied to Federal criminal practice as well. *See United States v. Schwensow*, 151 F.3d 650 (7th Cir.1998); *United States v. Glass*, 133 F.3d 1356 (10th Cir.1998).

5. Given our finding that there is no psychotherapist-patient privilege applicable to courts-martial, we need not consider whether the appellant's act of signing the "Statement of Understanding" constituted waiver of such a privilege.

fact unless they are "clearly erroneous" and conduct a *de novo* review of his conclusions of law. *United States v. Meeks*, 41 M.J. 150, 161 (C.M.A.1994)(quoting *United States v. Davis*, 36 M.J. 337, 340 (C.M.A.1993)). Since the issue in this case involves a question of law, we conduct a *de novo* review of the military judge's ruling. *United States v. Padgett*, 48 M.J. 273, 277 (1998).

■ Having conducted a *de novo* review, we find that the military judge did not err when he ruled that the appellant's communications to LT Hill were not protected by a psychotherapist-patient privilege. For the reasons articulated by the Army Court of Criminal Appeals in *United States v. Rodriguez*, 49 M.J. 528, 532 (Army Ct.Crim.App. 1998), until the President expressly exercises his authority under Article 36(a), UCMJ,[6] there is no general psychotherapist-patient privilege applicable to courts-martial.

We also find that a Medical Service Corps officer serving as a clinical psychologist on the staff of a military medical clinic is a "medical officer" within the meaning of Mil. R.Evid. 501(d).[7] Accordingly, the application of a psychotherapist-patient privilege to courts-martial would be "contrary to" and "inconsistent with" the language of Mil. R.Evid. 501(d), 101(b), and 501(a)(4).

### III. Effective Assistance of Counsel

In addition to claiming a psychotherapist-patient privilege at trial, the appellant unsuccessfully attempted to prevent LT Hill from testifying on behalf of the Government based upon claims that his communications to her were protected by the attorney-client privilege; were obtained in violation of his Article 31(b), UCMJ, rights; and, were the result of ineffective assistance of counsel. The appellant has not renewed his assertions of attorney-client privilege or violation of his Article 31(b), UCMJ, rights on appeal, but in his second assignment of error contends that he

was denied his right to the effective assistance of counsel as a result of the Government's use of information that both Captain [K] and he thought was confidential and protected by the attorney-client privilege.

The Supreme Court recognizes that "the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). This right, fundamental to our system of justice, is meant to assure fairness in the adversary criminal process. *United States v. Morrison*, 449 U.S. 361, 364, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981); *Gideon v. Wainwright*, 372 U.S. 335, 344, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Glasser v. United States*, 315 U.S. 60, 69–70, 75–76, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Johnson v. Zerbst*, 304 U.S. 458, 462–63, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

■ Ineffective assistance of counsel claims fall into two basic categories. In the first, the "Government violates the right to effective assistance when it interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)(citing *Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976) (bar on attorney-client consultation during overnight recess); *Herring v. New York*, 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975) (bar on summation at bench trial); *Brooks v. Tennessee*, 406 U.S. 605, 612–613, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972) (requirement that defendant be first defense witness); *Ferguson v. Georgia*, 365 U.S. 570, 593–596, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961) (bar on direct examination of defendant)). In *Morrison*, the Supreme Court noted that its cases have been "responsive to proved claims that Governmental conduct has rendered counsel's assistance to the defendant

6. A proposed change to Mil.R.Evid. 501 which would establish a limited psychotherapist-patient privilege was published in 62 Fed.Reg. 24640 (1998). Under that proposal, which has yet to be implemented, no privilege would exist if "the communication is evidence of spouse abuse, or child abuse or neglect." Mil.R.Evid. 501 has not been amended to establish a psychotherapist-patient privilege.

7. *See* RULE FOR COURTS-MARTIAL 706(c)(1), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.), which mandates that all members of boards ordered to inquire into the mental capacity or responsibility of an accused must be "either a physician or a clinical psychologist."

ineffective." *Morrison*, 449 U.S. at 364, 101 S.Ct. 665 (citing *Moore v. Illinois*, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977); *Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976); *Herring v. New York*, 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975); *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964)).[8]

In the second category, defense counsel deprives "a defendant of the right to effective assistance, simply by failing to render 'adequate legal assistance.'" *Strickland*, 466 U.S. at 686, 104 S.Ct. 2052 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 345–350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) (actual conflict of interest adversely affecting lawyer's performance renders assistance ineffective)). We review the appellant's case for both categories of ineffective assistance of counsel.

### A. Government Interference

■ We first look at whether the Government interfered in the attorney-client relationship and thereby deprived the appellant of his Sixth Amendment right to the effective assistance of counsel. In support of his position, the appellant cites a number of cases he contends "provide a useful framework to analyze ineffective assistance of counsel claims founded upon an intrusion into the attorney-client relationship." Appellant's Brief of 31 Mar 1998 at 13. In *Weatherford v. Bursey*, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977), a Government informant was invited to and actually attended a meeting between the accused and his attorney. In *United States v. Ankeny*, 28 M.J. 780 (N.M.C.M.R. 1989), the accused's civilian defense counsel, while attending a social function, informed the general court-martial convening authority's assistant staff judge advocate that the accused had solicited another officer to com-

mit an offense, a violation previously unknown to the Government, which was subsequently investigated and charges preferred. In *United States ex rel. Shiflet v. Lane*, 625 F.Supp. 677 (N.D.Ill.1985), *rev'd*, 815 F.2d 457 (7th Cir.1987), a private investigator hired by the accused's attorney as a member of the defense team affirmatively conveyed confidences to the police. In *Bishop v. Rose*, 701 F.2d 1150 (6th Cir.1983), a written communication prepared by the accused for his lawyer was seized during a routine search of his jail cell.

We find these cases distinguishable from the appellant's case for two basic reasons. First, the Government did not actively intrude into communications between the appellant and his counsel. We find no evidence that the Government offered LT Hill's services to the appellant, or encouraged Captain [K] to arrange for her to informally consult with the appellant as a means of gathering information adverse to him. Rather, the defense sought LT Hill's assistance without the knowledge or consent of the Government. Although LT Hill was a Government employee, her reasons for seeing the appellant were to make a diagnosis, determine appropriate treatment, and possibly to provide favorable testimony during the sentencing phase of his trial. LT Hill did not alert the Government to her conversations with the appellant and actually avoided cooperating with the Government until learning that she did not have the right to refuse to do so.

Second, there was no violation of a privilege by the appellant's attorney or by a member of the defense team. The appellant, not Captain [K], made admissions directly to LT Hill, an individual with whom he did not have a privileged relationship. Although Captain [K] believed appellant's conversations with LT Hill were privileged and conveyed this belief to the appellant, this mistake did not make the communica-

---

8. *Moore, Gilbert,* and *Wade* involved a violation of the defendant's right to the presence of counsel at a pretrial corporal identification or line-up. In *Massiah,* post-indictment, the Government utilized a cooperating co-defendant wearing a listening device to elicit incriminating statements from the accused outside the presence of his counsel. Also discussed were *Black v. United States,* 385 U.S. 26, 87 S.Ct. 190, 17 L.Ed.2d 26 (1966), and *O'Brien v. United States,* 386 U.S. 345, 87 S.Ct. 1158, 18 L.Ed.2d 94 (1967), cases in which law enforcement officers improperly overheard pretrial conversations between a defendant and his lawyer. *Morrison,* 449 U.S. at 364–65, 101 S.Ct. 665.

tions privileged. In this regard, we note that the appellant was a staff noncommissioned officer with over 17 years of service; that LT Hill put him on written notice, three days prior to their interview, that the information he provided to her was not strictly confidential; that according to the appellant's own testimony, LT Hill would not start their interview until he had read and signed the Statement of Understanding explaining the limits of the confidentiality of their relationship; [9] and that the appellant did not question LT Hill about this apparent contradiction or ask to first consult with Captain [K] before talking with her.

Based upon the facts in this case, we find the appellant's communications to LT Hill were not privileged communications and were not the result of a breach in the attorney-client relationship. We further find that the Government's use at trial of non-privileged communications between the appellant and LT Hill did not amount to Government interference in the appellant's attorney-client relationship, or render Captain [K]'s assistance to the defendant ineffective in violation of the Sixth Amendment.

Even assuming *arguendo* that there was Governmental interference by allowing LT Hill to testify and that this resulted in a violation of the appellant's Sixth Amendment right to the effective assistance of counsel, reversal of the conviction would not necessarily follow. The Supreme Court has held that "[c]ases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *Morrison*, 449 U.S. at 364, 101 S.Ct. 665.

In *Satterwhite v. Texas*, 486 U.S. 249, 257, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988), the Court wrote:

In this case, the effect of the Sixth Amendment violation is limited to the admission into evidence of Dr. [G]'s testimony. We have permitted harmless error analysis in both capital and noncapital cases where the evil caused by a Sixth Amendment violation is limited to the erroneous admission of particular evidence at trial. In *Milton v. Wainwright*, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972), for example, the Court held the admission of a confession obtained in violation of *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), to be harmless beyond a reasonable doubt.

The Court then applied the test established in *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."

In *Arizona v. Fulminante*, 499 U.S. 279, 307–08, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), following a review of many constitutional error cases in which a harmless error analysis was found to be appropriate, Chief Justice Rehnquist wrote that:

The common thread connecting these cases is that each involved "trial error"—error which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt. In applying harmless-error analysis to these many different constitutional violations, the Court has been faithful to the belief that the harmless-error doctrine is essential to preserve the "principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, and promotes public respect for the criminal process by

9. The following colloquy took place between the detailed defense counsel and the appellant during the presentation of evidence on the motion to suppress the appellant's admissions to LT Hill:

> Q. When Dr. Hill conducted her initial interview with you, did she hand you a document to sign?

> A. I hand [sic] her the questionnaire with that statement also with the questionnaire, and she noticed the statement wasn't signed, so she hand [sic] that statement back to me.
> Q. And what did she tell you to do?
> A. She told me that this needed to be read and signed.

Record at 394.

2

t2sa.

me so

Having carefully reviewed the entire record, we are convinced that even if it was error to admit the testimony of LT Hill, the admission of this evidence was harmless beyond a reasonable doubt given the devastating impact of the detailed videotaped interview of [N] and her consistent statements to Mrs. Kux.

### B. Actual Ineffective Assistance

We next look at whether Captain [K]'s having informally arranged for LT Hill's assistance without the benefit of a privilege amounted to actual ineffective assistance of counsel. A strong presumption exists that the work of an accused's defense counsel falls within the wide range of reasonable professional assistance. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. Therefore, to substantiate a claim of ineffectiveness, the appellant must satisfy a two-prong test. First, the defendant must show that his counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the appellant must show prejudice to his ability to receive a fair trial, the result of which was reliable. *Id.* at 687, 104 S.Ct. 2052. The test is whether "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, ... that course should be followed." *United States v. Wiley,* 47 M.J. 158, 160 (1997)(quoting *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052).

We find that even if Captain [K]'s performance was found deficient, his error was not so serious as to have deprived the appellant of a fair trial: a trial whose result is reliable. Without LT Hill's testimony, the Government's evidence was nonetheless overwhelming and established the appellant's guilt beyond a reasonable doubt. The taped interview of [N] and the testimony of Mrs. Kux were simply devastating. We find no reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

Accordingly, the assignment of error is without merit.

### IV. Videotape in the Deliberation Room

In his third assignment of error, the appellant contends that the military judge erred when, over objection, he allowed the members to take the videotaped interview of [N], Prosecution Exhibit 4, with them into the deliberation room. He claims prejudice because the members were given "the unrestricted opportunity to focus on the complaining witness' testimony in the sanctity of the deliberation room." Appellant's Brief of 31 Mar 1998 at 21. Noting that this appears to be an issue of first impression for this court,[10] the appellant cites *United States v. Binder,* 769 F.2d 595 (9th Cir.1985), as supporting his position. In *Binder,* a child sexual molestation conviction was reversed because the judge, in response to a request from the jury, allowed the videotaped testimony of the victims, which had been substituted by the parties in the place of live testimony, to be replayed for the members during their deliberations. The Government asserts that the videotaped interview was a statement and was properly provided to the members in accordance with R.C.M. 921(b).

R.C.M. 921(b) describes the process of deliberation and voting on findings as follows:

Deliberations properly include full and free discussion of the merits of the case. Unless otherwise directed by the military judge, members may take with them in deliberations their notes, if any, any exhibits admitted in evidence, and any written instructions. Members may request that the court-martial be reopened and that portions of the record be read to them or additional evidence introduced. The mili-

10. Appellant's Brief of 31 Mar 1998 at 19.

tary judge may, in the exercise of discretion, grant such request.

As noted by the appellant, other procedural and evidentiary rules and case law have limited the type of exhibits that members may have in their possession during deliberations. They may not have transcripts of testimony given at Article 32, UCMJ, hearings (*United States v. Ureta*, 44 M.J. 290 (1996); *United States v. Austin*, 35 M.J. 271 (C.M.A.1992)); stipulations of expected testimony, (R.C.M. 811(f); *United States v. Schmitt*, 25 C.M.R. 822, 1958 WL 3265 (A.F.B.R.1958)); depositions (*United States v. Jakaitis*, 10 C.M.A. 41, 27 C.M.R. 115, 1958 WL 3521 (1958)); or writings used for past recollection recorded (Mil.R.Evid. 803(5)).

 In the absence of a statute, case law, or applicable rule precluding the members from possessing and considering a particular type of exhibit during their deliberations, whether it is appropriate for members to have an exhibit with them is a matter within the sound discretion of the military judge. *United States v. Hurt*, 9 C.M.A. 73, 27 C.M.R. 3, 19, 1958 WL 3505 (1958). We review for an abuse of discretion.

 First, we find that the evidence at issue in this case, a videotaped interview of the victim, does not fit directly into any of the categories of evidence which members are expressly precluded from possessing and considering during their deliberations. We therefore concur with the military judge who, after reading the case cited by trial defense counsel in support of his objection[11] and considering the facts in this case, ruled that the videotape was "not analogous to a deposition." Record at 480.

Second, we find the nature of the videotape in this case to be unlike the one at issue in *Binder*. Prosecution Exhibit 4 was not prepared as a substitute for live, in-court testimony of a competent and available witness. Rather, it was more akin to a written statement that, if properly admitted into evidence, would typically accompany the members to the deliberation room in the absence of a ruling by the military judge to the contrary. *Hurt*, 27 C.M.R. at 19.

Third, we find that under the facts of this case, the availability of the videotape could not cause the members to place prejudicial emphasis on this piece of evidence.[12] As the appellant correctly notes, [N] is the only witness to the alleged misconduct by the appellant. [N] did not testify. The only other statements attributed to her and placed before the members through the testimony of others were consistent with the videotaped interview. Although it is clear both from the videotape and the testimony of [N's] therapist that she was conflicted as a result of having made the allegations against her father, Record at 338, the therapist indicated that [N] never retracted those allegations. Record at 340. The appellant did not testify or offer any evidence in his case-in-chief. As a result, allowing the members to have the videotape during their deliberations could not result in their unduly emphasizing it over [N's] nonexistent in-court testimony or her consistent out-of-court statements. Additionally, given the absence of a defense case-in-chief, this was not a credibility contest between the appellant and [N]. There simply was no risk that the members would unduly emphasize the videotape interview to the exclusion of other evidence by having access to it during their deliberations.

For these reasons, we find that the military judge did not abuse his discretion in allowing the members to have Prosecution Exhibit 4 with them during their deliberations. Additionally, even if it had been error, such error "is not *per se* reversible error. Prejudice must be determined in view of the

---

11. *United States v. Austin*, 35 M.J. 271 (C.M.A. 1992).

12. Fear of prejudicial emphasis placed on videotapes reviewed by members during deliberations is the consistent concern expressed by courts wrestling with this issue, regardless of their rulings. In addition to *Binder*, *see* the following state court decisions: *Connecticut v. Gould*, 241 Conn. 1, 695 A.2d 1022 (1997); *Young v. State*, 645 So.2d 965 (Fla.1994); *State v. Michaels*, 264 N.J.Super. 579, 625 A.2d 489 (1993); *State v. Kraushaar*, 470 N.W.2d 509 (Minn.1991); *State v. Jennings*, 815 S.W.2d 434 (Mo.Ct.App.1991); *Martin v. State*, 747 P.2d 316 (Okla.Crim.App. 1987); *Chambers v. State*, 726 P.2d 1269 (Wyo. 1986).

circumstances of each case." *Austin*, 35 M.J. at 277 n. 6. We find no possible prejudice in this case.

## V. Mil.R.Evid. 803(4)

### Medical Diagnosis or Treatment Hearsay Exception

The appellant next asserts that it was error for the military judge to admit under Mil.R.Evid. 803(4) certain out-of-court statements made by [N] to Mrs. Kux.[13] He contends that the evidence does not support the conclusion that [N] was seeking treatment at the time of the statements, or that the statements were made for the purpose of medical diagnosis or treatment.

■ Our superior Court has recognized the existence of a two-pronged test for determining the admissibility of statements offered under Mil.R.Evid. 803(4). In *United States v. Faciane*, 40 M.J. 399, 403 (C.M.A. 1994), the Court wrote that:

[F]irst the statements must be made for the purposes of 'medical diagnosis or treatment'; and second, the patient must make the statement 'with some expectation of receiving medical benefit for the medical diagnosis or treatment that is being sought.' *United States v. Edens*, 31 MJ 267, 269 (CMA 1990) (citations omitted). A key factor in determining whether the second prong is met is 'the state of mind or motive of the patient in giving the information ... and the expectation or perception of the patient that if he or she gives truthful information, it will help him or her to be healed.' *United States v. Clark*, 35 MJ 98, 105 (CMA 1992) (citation omitted).

The military judge's decision to admit this evidence is tested on appeal for an abuse of discretion. *Sullivan*, 42 M.J. at 363. Since the military judge did not make any findings of fact, we will make our own and conduct a *de novo* review of the military judge's conclusions of law. *Meeks*, 41 M.J. at 161.

■ First, we find that Mrs. Kux, a psychotherapist with a Bachelor's Degree in psychology and a Masters Degree in clinical social work, who was then practicing with two psychiatrists, Record at 81, was a person to whom [N] could make statements under Mil.R.Evid. 803(4). As our superior Court stated in *United States v. Haner*, 49 M.J. 72, 77 (1998):

Mil.R.Evid. 803(4) is not limited to statements made to medically licensed doctors, but may include others, such as persons providing medical treatment under the supervision or direction of medical personnel. As we have previously noted, '[g]iven the proper circumstances, statements made to psychologists, social workers, and other health care professionals may well fall within the purview of the medical-treatment exception to the hearsay rule.' *Morgan*, 40 M.J. at 408, *citing United States v. Welch*, 25 M.J. 23, 25 (CMA 1987).

■ Second, we find that [N's] statements to Mrs. Kux were made for the purpose of "medical diagnosis or treatment" and that she made the statements with some expectation that in being truthful she would receive medical benefit for the medical treatment she sought. We first note certain of [N's] own comments and the responses of her interviewer, Ms. Holmes, made during their meeting on 4 April 1996. Prosecution Exhibit 4. Near the end of that interview, [N] volunteered that she would sometimes engage in sexual activity with her father so that he would not be sad and, as a result, [N] felt somewhat responsible. Ms. Holmes told [N] that she was not responsible for her father's conduct and that special counseling would be arranged to help [N] work through her feelings. A few moments later, [N] volunteered that she would feel guilty if anything happened to her father as a result of her revelations, noting he only needed three years to retire from the Marine Corps. Ms. Holmes again told [N] that counseling would be arranged for her so that she would learn how

---

13. Mil.R.Evid. 803(4) provides a number of exceptions to the hearsay rule, even though the declarant is available as a witness. The fourth, commonly called the medical diagnosis exception, reads as follows: "Statements made for purposes of medical diagnosis or treatment and described medical history, or past or present symptoms, pain, or sensation, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

to not feel guilty. Following the interview, while Ms. Holmes was interviewing [N's] mother and sister, [N] prepared a document which she suggested might be posted to help others similarly situated, in which [N] noted that she was now receiving help.[14] Appellate Exhibit V; Record at 130, 132. True to her promise, Ms. Holmes arranged for [N] to see Mrs. Kux, for sexual abuse counseling. Record at 81, 133.

We next look to the testimony of Mrs. Kux, who met with [N] approximately seven times during the period 1 May 1996 through 22 July 1996.[15] Record at 82, 83. Mrs. Kux described the purpose of her interviews with [N] as follows:

> The purpose was to have her gain support and trust of someone and to work through the feelings of confusion and pain that she had had through her incidents with her father. We had started putting together resolutions scrap book where the victim goes through all the incidents that have happened to her and puts together a story about it. In that process, begins to resolve some of the feeling and the confusion that they experienced.

Record at 84. Later in her testimony Mrs. Kux stated that she "informed [N] that I would be her therapist and would be there to provide her with support." Record at 94. Mrs. Kux also confirmed that she told [N]

she would provide [N] counseling to assist her in dealing with the psychological affects of her experiences with the appellant; that [N] seemed interested in receiving treatment; that [N] cooperated by bringing journals, drawings, and poetry to their interviews; that [N] volunteered information about her relationship with the appellant which [N] felt was important; and that [N] shared with Mrs. Kux a letter written to her by the appellant while he was in pretrial confinement. Record at 94, 99, 103.

Based upon these findings of fact, we find that [N's] statements to Mrs. Kux were made for the purpose of medical diagnosis or treatment and with [N's] expectation that she would receive a medical benefit by being truthful with Mrs. Kux. Accordingly, we find that the military judge did not abuse his discretion in admitting under Mil.R.Evid. 803(4) the statements made by [N] to Mrs. Kux during the course of their therapy sessions. The assignment of error is without merit.

## VI. Post–Trial Effective Assistance of Counsel

■ The appellant's fifth assignment of error is that he was denied the effective assistance of counsel during the post-trial review process. He notes that the detailed military defense counsel against whom he had brought allegations of ineffective assis-

---

14. The complete text of Appellate Exhibit V is as follows:

April 4, 1996
To Kim:
Maybe you can hang this up for others to read.
*Your[sic] Not Alone*
Do you feel the emptyness [sic] and butterflies in your stomach?
I felt them inside.
 Do you feel ashamed or scared a lot?
 I did.
 Do you think its [sic] your fault?
 You shouldn't, and its [sic] not.
Do you feel alone and that its [sic] not going to end? I ask you these questions because this is how I felt. Your [sic] not alone I felt what you feel and if you want it to end then take a stand, be brave I did [sic] and now I'm getting help. Now I know I'm not alone. The Children's Advocacy Center is helping me and they will be there for you too. It won't end if its [sic] your little secret. End your pain give them a call. It may save you from the life you don't have to live.
By: [N]

15. In *United States v. Quigley*, 40 M.J. 64,65–66 (C.M.A.1994), our superior Court wrote:

> We note that application of Mil.R.Evid. 803(4) is not based on the availability of the declarant. n.1. The child might not testify or even appear at trial. *See generally White v. Illinois*, 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) (statement made for medical treatment admissible although child victim never testified at trial), *cited in United States v. Quigley*, 36 MJ at 752. Therefore, admissibility of an out-of-court statement made to a psychologist by a child declarant need not be based on the testimony of the child. n.2. Cf. *United States v. Edens, supra* at 268 (child-victim's expectation of receiving treatment determined by testimony of pediatrician who provided medical treatment); *United States v. Dean*, 31 MJ 196, 198–202 (CMA 1990) (child-victim's state of mind, *i.e.*, expectation of receiving medical treatment, was determined by testimony of a psychologist and the child's mother), *cert. denied*, 499 U.S. 906, 111 S.Ct. 1106, 113 L.Ed.2d 215 (1991).

tance of counsel during his trial prepared his R.C.M. 1105 petition. He has not claimed prejudice, made a colorable showing of prejudice, or shown what he would do to resolve the error if given such an opportunity. *See United States v. Wheelus,* 49 M.J. 283, 288–89 (1998).

We find this assignment to be entirely without merit. Although the appellant claimed at trial that Captain [K] had provided ineffective assistance in the procurement of the services of LT Hill, this motion failed despite Captain [K]'s candid admission of his mistaken understanding of the law of privileges, which is indicative of Captain [K]'s total commitment to the appellant. Furthermore, the appellant did not dismiss Captain [K], who played a very active role in the appellant's defense, and the appellant even designated Captain [K] to receive his copy of both the record of trial and staff judge advocate's recommendation. Record at 622; Appellate Exhibit XX. Furthermore, Captain [K] submitted a creditable clemency petition in October 1996, two months after trial and over two months before the issuance of the staff judge advocate's review. We find no conflict of interest or any evidence of actual ineffective assistance of counsel in the post-trial review process. *Strickland,* 466 U.S. at 686, 104 S.Ct. 2052.

## VII. Admission of Prosecution Exhibits 4 and 5

■ In his sixth and seventh assignments of error, the appellant claims that the military judge erred in admitting the videotaped interview of [N], Prosecution Exhibit 4, and the annotated anatomical drawings used during that interview, Prosecution Exhibit 5.[16] He believes the former was admitted in violation of his Sixth Amendment right to confront his accuser and the latter was inadmissible hearsay. We disagree on both counts.

We start by adopting the detailed findings of fact made by the military judge before he ruled that the appellant's Confrontation Clause rights were not abridged. Record at 272–84. In particular, we find that [N] was unavailable to testify at trial. *See Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). We further find that [N's] unavailability was a direct result of the actions of the appellant and members of his family acting on his behalf, with both his knowledge and approval. As a result, the appellant waived "any evidentiary or constitutional right to object to the military judge's subsequent ruling that [the witness] was 'unavailable'" *United States v. Clark,* 35 M.J. 98, 104 (C.M.A.1992). Additionally, we find that the Confrontation Clause was satisfied because, based upon the totality of the "circumstances surrounding the making of the out-of-court statement and not from subsequent corroboration of the criminal act," there were more than adequate indicia of reliability evidenced by a showing of particularized guarantees of trustworthiness.[17] *Idaho v. Wright,* 497 U.S. 805, 821, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990); *see also United States v. Cabral,* 47 M.J. 268 (1997). Furthermore, since the videotape was offered as evidence of material facts, was more probative on the point for which it was offered than any other evidence which the proponent could procure through reasonable efforts,

16. The assignment of error based upon the Confrontation Clause was raised pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982). Appellant's Brief of 31 Mar 1998 at 23.

17. These factors are very well-developed on the record and included by the military judge in his findings of fact. They include, but are not limited to, the spontaneity of the interview (occurred within one week of the last instance of sexual abuse; first time [N] had related detailed description of the abuse; [N] met her interviewer just minutes before the interview began; [N] was in a non-threatening environment with her mother and sister waiting for her outside the interview room); [N's] consistent repetition of the facts (the interviewer asked non-leading questions); [N] corrected the interviewer when she misstated what [N] had related; [N's] mental status during the interview (a mature 15 year old, [N] was obviously comfortable with the interviewer and well-aware of the seriousness of the information she was providing); [N] volunteered information she felt was important, including information favorable to the appellant, and stated that she didn't know the answers to some questions rather than speculate or make-up details; [N's] lack of a motive to lie ([N] did not want her father harmed as a result of her revelations and referred to his needing only three years to retire from the Marine Corps and his stature within the Paaluhi family); and the videotape provided the members the opportunity to view [N's] demeanor and communication skills.

and the interests of justice were best served by the admission of the videotape into evidence, the military judge did not abuse his discretion in admitting the videotape as residual hearsay under Mil.R.Evid. 803(24).

■ We also find no abuse of discretion in the military judge's admission of the anatomical drawings which were created during the videotaped interview of [N]. The drawings themselves were textbook type drawings of the human body and the handwriting on the drawings was placed there by Ms. Holmes and [N] during the course of their videotaped interview, was visible on the videotape, and the drawings merely indicated the names used by [N] in describing various body parts. Even if it were error to admit the drawings, the error would not have materially prejudiced a substantial right of the appellant. Art. 59(a), UCMJ.

## VIII. Judicial Neutrality

■ The appellant next complains that the military judge "abandoned his neutral and detached role and became [sic] partisan advocate when his questions laid the foundation for evidence to be admitted against appellant and when he instructed appellant to assist the Government to procure the presence of the prosecutrix." [18] Appellant's Brief of 31 Mar 1998 at 24.

Public confidence in the integrity and impartiality of a judge is sustained in large part by the conduct of a judge during the proceeding. *See* Canon 2A, ABA Code of Judicial Conduct. In the military, a judge may not abandon his role as an impartial party and assist in the conviction of a specific accused. *United States v. Lindsay,* 12 U.S.C.M.A. 235, 30 C.M.R. 235, 1961 WL 4430 (1961).

*United States v. Reynolds,* 24 M.J. 261, 264 (C.M.A.1987).

[A] military judge is not 'a mere referee' but, rather, properly may participate actively in the proceedings. *See United States v. Graves,* 1 MJ 50, 53 (CMA 1975). Thus, while a military judge must maintain his fulcrum position of impartiality, the judge can and sometimes must ask questions in order to clear up uncertainties in the evidence or to develop the facts fur-

ther. *See United States v. Dock, supra; United States v. Tolppa,* 25 M.J. 352 (CMA 1987); *United States v. Reynolds,* 24 M.J. 261 (CMA 1987). The legal test that flows from all this is whether, 'taken as a whole in the context of this trial,' a court-martial's 'legality, fairness, and impartiality' were put into doubt by the military judge's questions. *United States v. Reynolds, supra* at 265. This test is applied from the viewpoint of the reasonable person. S. Childress & M. Davis, 2 *Federal Standards of Review* § 12.05 at 12–38 (2d ed.1992).

*United States v. Ramos,* 42 M.J. 392, 396 (1995).

Having carefully reviewed the entire record, we find that the military judge's comments, questions, and rulings, considered from the viewpoint of a reasonable person in the context of the whole trial, would not cause that person to doubt the legality, fairness, and impartiality of the appellant's trial. We find absolutely no evidence that the military judge in this case abandoned his role as an impartial party. The assignment of error is without merit.

## IX. *Ex Post Facto*

In his eighth and final assignment of error, the appellant contends that application of the 1996 amendments to Article 57(a) and 58b, UCMJ, in his case violates the *ex post facto* clause of the Constitution. *United States v. Gorski,* 47 M.J. 370 (1997). The Government does not contest the assignment. Since this issue is administrative in nature, however, it does not affect the approved findings or sentence.

## X. Conclusion

Accordingly, we affirm the findings and sentence as approved below. This case is returned to the Judge Advocate General of the Navy for any administrative action that might be required.

Chief Judge SEFTON and Judge ANDERSON concur.

**18.** This issue was raised pursuant to *United* *States v. Grostefon,* 12 M.J. 431 (C.M.A.1982).