UNITED STATES, Appellee,

v.

Keith R. PAALUHI, Gunnery Sergeant,
U.S. Marine Corps, Appellant.

No. 99–0844.

Crim.App. No. 97–0321.

U.S. Court of Appeals for
the Armed Forces.

Argued March 2, 2000.

Decided Sept. 25, 2000.

Gierke, J., filed opinion concurring in the
result in which Cox, Senior Judge, joined.

SULLIVAN, J., delivered the opinion of the Court, in which CRAWFORD, C.J., and EFFRON, J., joined. GIERKE, J., filed an opinion concurring in the result, in which COX, S.J., joined.

For Appellant: *Lieutenant M. Eric Eversole*, JAGC, USNR (argued); *Lieutenant Frank M. Doherty*, JAGC, USNR (on brief).

For Appellee: *Major Michael D. Tencate*, USMC (argued); *Colonel Kevin M. Sandkuhler*, USMC, and *Commander Eugene E. Irvin*, JAGC, USN (on brief).

Judge SULLIVAN delivered the opinion of the Court.

During August of 1996, appellant was tried by a general court-martial with officer members at Marine Corps Base Hawaii, Kaneohe Bay, Hawaii. Contrary to his pleas, he was found guilty of rape, forcible sodomy, and committing indecent acts on a child, in violation of Articles 120, 125, and 134, Uniform Code of Military Justice, 10 USC §§ 920, 925, and 934, respectively. On August 17, 1996, he was sentenced to a dishonorable discharge, confinement for 10 years, and reduction to E-1. The convening authority approved this sentence on January 15, 1997, and the United States Navy–Marine Corps Court of Criminal Appeals affirmed. *United States v. Paaluhi*, 50 MJ 782 (N.M.Ct.Crim. App.1999).

On October 27, 1999, this Court granted review on the following issues:

## I

WHETHER THE LOWER COURT ERRED WHEN IT CONCLUDED THAT THE SUPREME COURT'S RECOGNITION OF A FEDERAL PSYCHOTHERAPIST–PATIENT PRIVILEGE DOES NOT APPLY TO THE MILITARY.

## II

WHETHER THE LOWER COURT ERRED WHEN IT FOUND EFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL DEFENSE COUNSEL ADVISED APPELLANT THAT HIS COMMUNICATIONS WITH A PSYCHOTHERAPIST WOULD BE PRIVILEGED UNDER *JAFFEE V. REDMOND*.

## III

WHEN A RECORDED STATEMENT IS ADMITTED INTO EVIDENCE, SHOULD THE MEMBERS BE ALLOWED TO LISTEN OR VIEW THE RECORDING AGAIN DURING THEIR CLOSED DELIBERATIONS? DID THE LOWER COURT ERR WHEN IT FOUND THAT IT WAS PERMISSIBLE FOR THE MILITARY JUDGE TO ALLOW THE MEMBERS TO VIEW A VIDEOTAPED INTERVIEW OF THE ALLEGED VICTIM DURING DELIBERATIONS.

We hold that appellant's statements to a Navy psychologist were not protected by the federal civilian psychotherapist-patient privilege. *See United States v. Rodriguez*, 54 MJ 156 (2000). Nevertheless, we conclude that he received ineffective assistance of counsel when his military defense counsel advised him to speak to this government psychologist who had not been officially detailed to assist the defense.[1] *See United States v. Toledo*, 25 MJ 270, 275-76 (CMA 1987), *aff'd on reconsideration*, 26 MJ 104, 105 (CMA 1988).

The record of trial in this case shows that on March 31, 1996, the victim made an entry in her journal recounting how she felt after having just had sexual relations with her father, the appellant. (Prosecution Exhibit 4) On April 3, 1996, the victim's mother read the journal and reported this situation to Ms. Kimberly Holmes, a child sexual abuse investigator with the Hawaii Department of Human Services, Child Protective Services. (R. 115–18) Ms. Holmes contacted the Naval

---

1. Issue III need not be answered at this time.

Criminal Investigative Service (NCIS). (R. 124, 161) NCIS Special Agent Deborah Russell arranged for an interview of the victim to take place the next day at the Child Advocacy Center, a facility that had rooms appropriate for the interview of children in a non-threatening environment. (R. 124–25, 174)

On April 4, 1996, the victim, her mother, and her younger sister traveled to the Child Advocacy Center, where they were introduced to Ms. Holmes, Agent Russell, and another NCIS special agent. (R. 127–28, 174–75) Ms. Holmes interviewed the victim in a private room, telling the victim that the interview was being watched and videotaped by Agent Russell and the other NCIS special agent, who were located behind a two-way mirror. (R. 127, 175) Ms. Holmes subsequently referred the victim to Mrs. Lynn Kux, a clinical social worker, who met with the victim approximately 10 times between May 1 and July 22, 1996. (R. 337, 354)

Appellant was placed in pretrial confinement on April 5, 1996. (Charge Sheet; R. 27) Captain (Capt) K was detailed as defense counsel. (R. 3, 25, 392, 398) During pretrial preparation of appellant's case, appellant's defense counsel contacted Lieutenant (Lt) Suzanne Hill, a Navy Medical Service Corps officer and clinical psychologist, who was assigned to a local military medical clinic. (R. 369, 399, 421, 424) Capt K testified that, at the time he contacted Lt Hill, he anticipated presenting only a case in sentencing and was looking for an expert to provide testimony favorable to appellant. (R. 399) Without requesting that the convening authority or military judge assign Lt Hill to assist in appellant's defense, defense counsel convinced Lt Hill to meet with and evaluate appellant and *he advised appellant to cooperate with Lt Hill*. (R. 293–95, 399–400)

On May 31, 1996, Lt Hill faxed a document entitled "Initial Personal History Questionnaire" to appellant in the brig. (Appellate Exhibit 15; R. 386) Included with the questionnaire was a "Statement of Understanding Regarding Limits of Confidentiality within Military Mental Health Departments," which indicated that disclosures related to "suspected child abuse" must be turned over to "med-

ical, legal or other authorities." (Appellate Exhibit 15; R. 369 ff., 388, 393 ff.) Lt Hill ensured that appellant had read and signed the Statement of Understanding before she commenced her initial interview of appellant on June 5, 1996. (R. 369 ff., 388, 393 ff.) During their meetings on June 5 and 26 and on July 5 and 30, 1996, appellant told Lt Hill that he had been having sex with the victim for the last 5 years, but did not give specific details. (R. 372, 425) The military judge denied appellant's pretrial motion to suppress all of his statements to Lt Hill. (R. 407) Lt Hill testified at appellant's court-martial that appellant told her that he had been having sex with the victim for the last 5 years. (R. 425)

— — —

## I

■ We first must consider whether evidence of appellant's statements to Lt Hill, a Navy clinical psychologist, was barred by the psychotherapist-patient privilege recognized by the Supreme Court in *Jaffee v. Redmond*, 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). In this Court's decision today in *United States v. Rodriguez, supra*, we held that communications made by a member of the military to a psychotherapist on or before November 1, 1999, were not privileged on this basis as a matter of military law. Appellant's incriminating statements to Lt Hill were made prior to this date, *i.e.*, during June and July of 1996. Accordingly, they were not inadmissible because of the psychotherapist-patient privilege and the military judge's denial of the defense motion to suppress appellant's pretrial statements on this basis was correct. (R. 407, 514–17)

## II

■ Appellant next argues that his admissions to Lt Hill were inadmissible because they were made as a result of ineffective assistance of his defense counsel. This Court reviews ineffective-assistance-of-counsel claims *de novo. See United States v. Scott*, 24 MJ 186, 188 (CMA 1987). In order to prevail upon an ineffective-assistance-of-counsel claim, appellant must demonstrate that his counsel's performance was deficient,

*i.e.,* that he was not functioning as counsel, and that this deficiency seriously prejudiced his defense. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ There is no dispute that Capt K failed to have Lt Hill assigned to the defense team, a requirement for confidentiality under military attorney-client-privilege law. (R. 294, 304, 306, 401, 405–07) *See United States v. Toledo,* 25 MJ at 275–76, *aff'd on reconsideration,* 26 MJ at 106; RCM 703(d); Mil. R.Evid. 502(a), Manual for Courts-Martial, United States (1995 ed.). Moreover, he sent his client to this government psychologist on June 5, 1996 (8 days before the Supreme Court decision in *Jaffee v. Redmond, supra*), when there was no psychotherapist-patient privilege under military law. (R. 401) Finally, Capt K testified that his understanding of the law concerning the confidentiality of his client's communications was erroneous. (R. 294, 401) Nevertheless, the military judge found that there was no ineffective assistance of counsel because Capt K had "a very reasonable tactical basis" and "a very viable basis" for his actions. (R. 306–07)

The military judge explained his tactical-decision rationale as follows:

Now there is before the court a defense motion to suppress all of the statements made by the defendant to Lieutenant Hill in the course of her various meetings with the defendant. That motion to suppress is denied in its entirety. Now in this connection, *I find, that there was neither any doctor-patient privilege nor any attorney-client privilege that existed between the defendant and Lieutenant Hill at the time of these interviews and these statements.* In this connection, I simply find the Toledo [sic] to be factually indistinguishable from the case at bar in any meaningful sense of the word, and I think it's really the controlling case.

With regard to the issue of the claim of ineffective assistance of counsel in this connection, I find that there was no ineffective assistance of counsel and that counsel acted in a competent and professional manner. Of course, in judging the standard of performance and whether or not the counsel's performance was deficient in any way, it is necessary to judge the facts and circumstances as they were known to the counsel at the time of the conduct. In this connection, I think it's clear from the testimony and also from the representations of counsel at earlier stages of these proceedings, that in reality for much of the time that this case was pending, *it was the intention and strategy of the defense to negotiate a plea-bargain on behalf of the accused that would involve some sort of negotiated plea of guilty accompanied by a sentencing hearing.* And it's in that context, I find, that the defense counsel initially contacted Lieutenant Hill with a view toward trying to arrange for her sentencing testimony. Clearly, the focus of Captain K's strategy in contacting Lieutenant Hill at all times has been to build a persuasive and effective sentencing case on behalf of the defendant. Under the circumstances, of course, that sort of strategy presupposes that it is the intention and strategy of the defense to enter a plea of guilty to substantive charges that are alleged on the charge sheet. I find that that was in fact the intention and strategy of the defense at the time, and under the circumstances, of course, *if the accused was planning on a judicial confession in open court of his guilt, then pretty clearly the defense would have little reason to be concerned about whether or not Lieutenant Hill would be in a position to make disclosures of these statements to other individuals. So I find that counsel's performance was not deficient within the meaning of Strickland v. Washington, and for that reason, I find that defendant was not denied the effective assistance of counsel in this case.*

(R. 407–08 (emphasis added)).

We cannot agree with the military judge's assessment of defense counsel's performance. *See Strickland v. Washington, supra* at 698–99, 104 S.Ct. 2052 (no dispute tactical decision made). Admittedly, defense counsel, in seeking favorable sentencing evidence, effectively advised appellant to confess to commit-

ting the charged offenses. *See Toro v. Fairman*, 940 F.2d 1065, 1068–69 (7th Cir.1991); *see generally Huckelbury v. Dugger*, 847 F.2d 732 (11th Cir.1988). However, it further shows that he did so without awareness of the local Navy Medical Department's limited confidentiality policy and because he erroneously believed that their communications would be protected under the attorney-client privilege. (R. 393, 401) *Cf. Smith v. Rogerson*, 171 F.3d 569, 572–73 (8th Cir.1999) (not ineffective assistance to advise defendant to make statement to police where so much other damaging evidence against him). Furthermore, the record shows that defense counsel erroneously failed to take the necessary steps to protect these statements by having Lt Hill assigned to the defense team as required by military attorney-client-privilege law. *See United States v. Toledo, supra.* (R. 398–401) In our view, this record clearly shows deficient attorney performance, not reasonable defense tactics. *Cf. United States v. Thompson*, 51 MJ 431, 435–36 (1999) (defense counsel made reasonable tactical decision not to have his client speak to government psychotherapist because of self-incrimination problems).

▮ To support the second prong of *Strickland v. Washington, supra*, appellant must show that there "is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland v. Washington*, 466 U.S. at 695, 104 S.Ct. 2052. The lower appellate court resolved appellant's ineffective-assistance-of-counsel claim on the alternative grounds that there was no prejudice, stating:

> We find that even if Captain [K]'s performance was found deficient, his error was not so serious as to have deprived the appellant of a fair trial: a trial whose result is reliable. Without LT Hill's testimony, the Government's evidence was nonetheless overwhelming and established the appellant's guilt beyond a reasonable doubt. The taped interview of [N] and the testimony of Mrs. Kux were simply devastating. We find no reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

50 MJ at 789.

However, a defendant's confession is usually considered the most devastating evidence. (Here it amounted to a confession of sex with his daughter for 5 years.) *See Arizona v. Fulminante*, 499 U.S. 279, 296, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). Moreover, we disagree with the lower court's characterization of the other evidence in this case as "overwhelming" and "devastating." *Cf. Still v. Lockhart*, 915 F.2d 342, 344 (8th Cir.1990).

The Government's case, absent evidence of appellant's "confession," consisted of the victim's videotaped interview and Mrs. Kux's testimony as to the victim's out-of-court statements. (Appellate Exhibit VII; R. 312, 336–60) The victim's statement was made outside of court, and she was not subject to cross-examination by the defense. Mrs. Kux met with the victim about 10 times between May 1 and July 22, 1996, for one hour each session. (R. 337, 354) Her testimony served to corroborate the victim's out-of-court statements (R. 349, 351) but, as such, it cannot be characterized as "overwhelming" and "devastating." In our view, there is a reasonable probability that without admission of appellant's inculpatory statements to Lt Hill, the members would have had a reasonable doubt with respect to appellant's guilt.

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is reversed. The findings of guilty and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Navy. A rehearing may be ordered.

GIERKE, Judge, with whom COX, Senior Judge, joins (concurring in the result):

I would resolve this case on Issue I. For the reasons set out in my dissent in *United States v. Rodriguez*, 54 MJ 156, 162 (2000), I would hold that the military judge erred by admitting appellant's admissions to Lt Hill.

Because I believe that appellant's conversations with Lt Hill should have been protected as privileged communications, I cannot join in holding that appellant's defense counsel was ineffective for permitting him to talk to Lt Hill.