UNITED STATES, Appellee

v.

David E. BREEDING, Lieutenant
Colonel, U.S. Air Force,
Appellant.

No. 94–0650.
Crim. App. No. 30218.

U.S. Court of Appeals for
the Armed Forces.

Argued Jan. 31, 1996.

Decided Aug. 30, 1996.

For Appellant: *Captain Todi S. Carnes* (argued); *Colonel Jay L. Cohen, Captain Eric N. Eklund, Captain Arthur E. Jackman, Jr.* (USAFR) (on brief).

For Appellee: *Captain Deborah M. Carr* (argued); *Colonel Jeffery T. Infelise* (on brief).

*Opinion of the Court*

CRAWFORD, Judge:

Contrary to his pleas, appellant, a chaplain, was convicted at Offutt Air Force Base, Nebraska, of assault and battery (2 specifications), assault with a dangerous weapon (3 specifications), communicating a threat (2 specifications), and kidnapping, in violation of Articles 128 and 134, Uniform Code of Military Justice, 10 USC §§ 928 and 934, respectively. The victims in this case are appellant's wife, stepson, and stepdaughter. The convening authority approved the sentence imposed by the members of a dismissal; and the then-Court of Military Review affirmed. Upon remand from this Court the now-Court

of Criminal Appeals again affirmed the findings and sentence. We granted review on the following issue:

WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION BOTH BY DENYING CERTAIN DEFENSE REQUESTS FOR THE PRODUCTION OF CERTAIN WITNESSES AND BY PERSISTING IN HIS DENIAL OF SAID WITNESSES NOTWITHSTANDING THE WILLINGNESS OF THE DEFENSE TO RELIEVE THE PROSECUTION OF THE EXPENSES ASSOCIATED WITH THEIR APPEARANCE AT TRIAL, THEREBY DEPRIVING APPELLANT OF HIS SIXTH AMENDMENT RIGHT TO EQUAL OPPORTUNITY TO OBTAIN WITNESSES UNDER RCM 703.

We hold that the judge did not abuse his discretion in determining that the defense witnesses were not relevant and necessary, regardless whether travel expenses were to be paid by the Government or by the witnesses themselves.

## FACTS

The defense requested 19 witnesses on November 9, 1991; 3 more on December 5, 1991; and 1 more on December 13, 1991. At the session under Article 39(a), UCMJ, 10 USC § 839(a), held on December 18, 1991, the Government revealed that it had approved funding for 12 of the 23 requested witnesses. Asked by the judge whether they wanted to litigate the request for the remaining witnesses, the defense requested, and received, a delay in the proceedings to provide additional justification for these witnesses. On December 20, the defense returned with additional information and requested the opportunity to litigate their request for only 8 of the as-yet-unapproved witnesses. Of these, the judge granted production of but two witnesses.

In summary, the following number of requested witnesses were granted: (a) 3 out of 6 as to military character and duty performance; (b) 9 out of 13 as to peacefulness; (c) none as to truthfulness; and (d) 5 out of 6 as to appellant's mental state. As we discuss

later, 44 MJ at 352, other witnesses testified as to traits (a) through (c).

The substance of the proffered testimony is set forth in Appellate Exhibit XXXIII as follows:

13. Major (Chaplain) Gustaf Steinhilber ... was assigned with Lieutenant Colonel Breeding in Germany and is aware of the marital problems between LtCol Breeding and his wife. He knew LtCol Breeding from August in 1988 until LtCol Breeding left Germany for his assignment to Offutt Air Force Base, and worked closely with him throughout that time. Chaplain Steinhilber has a background [in] marital and family counseling. ... He counseled LtCol Breeding and Elizabeth Breeding concerning their marital problems roughly six times. He will testify concerning LtCol Breeding's good military character and non-violent nature. He will testify as to Mrs. Breeding's aggressiveness, her provocative and demanding attitude toward her husband, and LtCol Breeding's tendency to internalize his frustration with his wife's behavior. He will testify as to Elizabeth Breeding's mood swings, rigidity, and tendency to get extremely emotional, all of which [a]ffects her credibility as well as her ability to accurately perceive the events she will be testifying about. He will testify that in his opinion Elizabeth Breeding is prone to exaggeration because she tends to [see] things as black and white, and he therefore has a poor opinion of her character for truthfulness. In the event of a conviction, Chaplain Steinhilber will also be wanted as a witness for sentencing. Chaplain Steinhilber worked with LtCol Breeding for several years and can testify as to LtCol Breeding's good duty performance as well as his personal observations of the mental suffering endured by LtCol Breeding because of the marital difficulties between himself and Mrs. Breeding. He will testify that LtCol Breeding was in a difficult position while assigned to Germany because he was an Air Force Chaplain on a base comprised primarily of Army personnel, and that LtCol Breeding did a good job under those difficult circumstances. ...

\* \* \*

17. Mr. Lewis Burnett, Director of Military Chaplains, Southern Baptist Convention, ... is wanted as a witness during the findings portion of the trial to testify as to LtCol Breeding's good military character. Mr. Burnett retired from the Army as a Colonel after serving a lengthy career as an Army Chaplain. He became Director of Military Chaplains for the Southern Baptist Convention in February 1986 and received quarterly reports from Chaplain Breeding. He has met LtCol Breeding approximately six times and h[a]s met Elizabeth Breeding several times. He is aware of the marital problems of the accused in Germany and is therefore uniquely qualified to testify as to LtCol Breeding's good military character, truthfulness, and non-violent nature. The accused will offer testimony that his wife threatened to divorce him and used this threat to blackmail him, and Mr. Burnett will testify as to the immense pressure a Chaplain would be under in such circumstances because of the possibility that the church would revoke the Chaplain's credentials. In the event of a conviction, this witness will be wanted for sentencing. He will testify that competition for appointments as a Southern Baptist Chaplain are extremely competitive and that LtCol Breeding was selected because of his qualifications and professionalism. He will testify that he believes LtCol Breeding can return to service as a chaplain....

\* \* \*

19. Ms. Susan Breeding Herrin ... will testify she is the accused's sister and is two years younger than him. She will testify that she and LtCol Breeding were raised together and attended college together. She will testify she has maintained frequent contact with her brother since his entry into the military, usually visiting him twice a year. She has also maintained contact by telephone and mail. She will testify as to the accused's character for peacefulness, his non-violent nature, her opinion as to his truthfulness, and his reputation as to his truthfulness. Ms. Herrin will also testify that she has observed Elizabeth Breeding and that Mrs.

Breeding spent a week with her in July of 1990. She will testify Mrs. Breeding is extremely volatile and aggressive, and that although Mrs. Breeding provoked her husband on many occasions, LtCol Breeding never lost his temper. In the event of a conviction, Mrs. Herrin will testify as to the stress caused by LtCol Breeding's first divorce, the emotional trauma caused by the death of LtCol Breeding's father last year, and the trauma caused by the imminent death of his mother. She will testify her brother is hardworking, unselfish and dedicated to being a minister. She will also testify as to statements made by the accused's mother concerning the accused's character for truthfulness and non-violence, and the defense will offer those statements under the excited utterance and residual hearsay exceptions....

20. Chaplain, Colonel Benjamin Perez ... is requested as a witness on findings and will testify as to the accused's good military character. Col Perez was a chaplain assigned to HQ USAFE/HC while LtCol Breeding was stationed in Germany; he had previously been on the faculty of the Air Force Chaplain's school and knew the accused in that capacity as well. He has known the accused since the early 1980s. In the event of a conviction, Chaplain Perez will be wanted as a sentencing witness....

21. Chris Smith ... is requested as a witness at trial. He will testify he lived in West Germany at the time the accused and his family lived there; that he was a friend of the accused's children and step-children; that Elizabeth Breeding has a quick and violent temper and is given to emotional outbursts; that on two occasions Mrs. Breeding attacked her son Ryan with the result that he (Mr. Smith) was required to separate the two of them; that Mrs. Breeding constantly yelled at her husband regarding his alleged failure to discipline the children and constantly put him down in public, and that LtCol Breeding never lost his temper in those circumstances.

22. Dr. Gayle Dean ... is the father of Elizabeth Breeding. He is requested as a witness for findings; he has observed the accused with his family and because of his

credentials and knowledge of his daughter's character is uniquely qualified to testify as to LtCol Breeding's peacefulness and truthfulness. . . .

---

The judge made the following findings as to the defense request for the production of witnesses:

Defense has failed to establish that Mr. Burnett has had sufficient contact with the accused to testify as to the accused's military character, truthfulness or nonviolent nature. His testimony as to the impact of any conviction as related in Appellate Exhibit [X]XXIII appears to be tangential to this trial and not a direct and immediate result of conviction; it's speculative on the witness' part. Speculative in the sense that a witness could only testify as to apparently what the process would be and not what the outcome would be.

\* \* \*

I decline to direct the Government to produce Colonel Perez. I believe his testimony is cumulative with other witnesses who will or will be [sic] produced or are going to be produced and that he does not have a sufficient basis for a number of things that defense counsel indicates he'll testify to. I also decline to direct the Government to produce Susan Herrin. She also lacks sufficient contact as far as her testimony on the merits and some of the things that she would testify are cumulative with other witnesses who will be called or that I will direct be called. In regards to her sentencing information, the trial counsel said he's willing to stipulate as a matter of fact. I believe the credibility of this witness is not an issue and that there are other means available by which her testimony can be introduced into the trial. I don't believe the significance of her testimony outweighs the cost involved in transporting her from Tennessee.

\* \* \*

Also, I decline to direct the Government to produce Mr. Dean or Dr. Dean. I believe

that his testimony is cumulative with other testimony of witnesses who will be called or that I will direct to be called. I've read his letter, and it doesn't really appear to have anything to say that pertains—that's relevant to this case and admissible.

\* \* \*

In regards to Major Steinhilber and Mr. Mike Green, I will direct that one of them be brought. That is for the defense counsel to decide which one. I believe both individuals, from the proffer made by the defense, can have testimony as far as the military duty performance of the accused [at] the time he was stationed in Germany. In addition, both individuals have testimony as far as the peacefulness or lack thereof of Mrs. Breeding. . . .

\* \* \*

I will not direct that he [Mr. Chris Smith] be brought; however, apparently his testimony only pertains to the peacefulness or lack thereof of Mrs. Breeding. However, if that character, if we can call it a character trait, becomes relevant during the trial, such as a defense of self-defense, I will reconsider—I will reconsider the ruling based on a defense counsel request. I would suggest that if you're going to raise self-defense as a defense that you tell me in a timely manner so that Mrs. Smith can be—excuse me, Mr. Smith can be brought. And I would point out that Mr. Smith's testimony is cumulative with some of the other testimony on that trait who are going to testify, that is, the wife's aggressiveness or nonaggressiveness.

## DISCUSSION

■ "The standard of review for rulings denying requests for production of witnesses is abuse of discretion." *United States v. Reveles,* 41 MJ 388, 393–94 (1995). Requests for production of witnesses are governed by procedural and evidentiary rules set out *infra.*

*Procedural Rules.* RCM 703, Manual for Courts–Martial, United States (1995 ed.), is

the procedural rule governing production of witnesses. A party is entitled to production of witnesses whose testimony "would be relevant and necessary" to a matter in issue. RCM 703(b)(1). According to RCM 703(c)(2)(B)(i), the defense must set forth a "synopsis of the expected testimony sufficient to show its relevance and necessity." Although this Rule does not define relevance, its discussion does state that evidence is "necessary when it is not cumulative and when it would contribute to a party's presentation of the case in some positive way on a matter in issue." *See, e.g., United States v. Credit,* 8 MJ 190, 193 (CMA 1980); *United States v. Williams,* 3 MJ 239 (CMA 1977).

■ *Evidentiary Rules.* As to the definition of relevance found in RCM 703, we must examine Section IV of the Military Rules of Evidence. The definitions of logical and legal relevance are found in Mil.R.Evid. 401–403, Manual, *supra.* The specific rules concerning relevance as it relates to character evidence are found in Mil.R.Evid. 405(a) and (d), which provide:

(a) *Reputation or opinion.* In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. . . .

\* \* \*

(d) *Definitions.* "Reputation" means the estimation in which a person generally is held in the community in which the person lives or pursues a business or profession. "Community" in the armed forces includes a post, camp, ship, station, or other military organization regardless of size.

■ *Reputation Evidence.* Whether reputation evidence is admissible under Mil.R.Evid. 405 depends upon the witness' being a member of appellant's military community, *i.e.,* "a post, camp, ship, station, or other military organization regardless of size." Mil.R.Evid. 405(d). As this Court stated in *United States v. Reveles,* 41 MJ at 395: "The definition of 'community' . . . is inclusive rather than restrictive."

We noted in *United States v. Toro,* 37 MJ 313, 317 (CMA 1993), the following as to character traits:

The proponent must show that the character witness who will testify as to the witness' reputation resides or works in the same community as the witness and has lived or worked in the community long enough to have become familiar with the witness' reputation in the community.

■ It is not enough to show that the witness was a member of the community. It must be shown that the witness worked or resided "in the same community . . . long enough to have" formed an opinion or to have heard of appellant's or his wife's reputation in the community. *United States v. Toro,* 37 MJ at 317; *see also Michelson v. United States,* 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948).

■ Reputation evidence will reveal how an individual is known in the community. Reputation is what the witnesses have heard about appellant or his wife, whereas opinion evidence relates to their own personal observations and experiences with appellant and his wife. Thus, the witness must be or have been sufficiently acquainted with the person living and working in the community and the circles in which he moved that he could speak with authority as to appellant's or his wife's reputation there.

■ *Opinion Evidence.* Opinion evidence differs from reputation evidence as to its foundational requirements. The witness need not be a member of the community or unit to have known appellant long enough to have formed an opinion as to his character, whereas reputation-type evidence is a summary as to how an individual is known in the community or unit. As we stated in *United States v. Toro,* 37 MJ at 317:

To lay a proper foundation for opinion evidence, the proponent must show that the character witness personally knows the witness and is acquainted with the witness well enough to have had an opportunity to form an opinion of the witness' character for truthfulness.

RCM 703(c)(2)(B)(i), in conjunction with Mil.R.Evid. 405, is satisfied by setting forth: (1) the name of the witness; (2) whether the witness was a member of the same community or unit as appellant; (3) how long the witness has known appellant; (4) whether the witness knew appellant or his wife in a professional or social capacity; (5) the character trait known; and (6) a summary of the testimony about it. None of the defense requests at trial gave all of this information to the convening authority or the military judge.

### Proffered Character Witnesses

The judge did not abuse his discretion in refusing to subpoena Major Steinhilber. The proffer did not establish that he knew appellant long enough to have formed an opinion as to appellant or to have heard of his reputation in the community. Additionally, as to the wife's aggressiveness, the fact that Major Steinhilber interviewed them "roughly six times," with no indication as to the length or the intensity of the interviews, would not be sufficient contact to require him to be subpoenaed as a relevant and necessary witness. *United States v. Ingham,* 42 MJ 218, 225 (1995) (chaplain's interviews with appellant's wife were not sufficient for him to testify as to her truthfulness); *United States v. Farrar,* 28 MJ 387, 388, 390 (CMA 1989) (no abuse of discretion in prohibiting a drug-abuse counselor, who was involved in "an intensive 3-hour one-on-one interview with" the accused, from testifying as to her truthfulness); *United States v. Williams,* 26 MJ 487, 489, 490 (CMA 1988) (harmless error to allow defense witness who conducted two interviews with the victim, which lasted only a total of one and a half hours, to testify on cross-examination as to the victim's "truthfulness"); *United States v. Perner,* 14 MJ 181, 184–85 (CMA 1982) (harmless error for hospital corpsmen, who had seen appellant's wife on several occasions, to testify as to her credibility); *see also United States v. Jenkins,* 27 MJ 209, 211 (CMA 1988) (no abuse of discretion in prohibiting individual, who performed four or five marriage counseling sessions, from testifying as to Jenkins' good character).

Likewise, the judge did not abuse his discretion in refusing to require the subpoena of Mr. Burnett. He was never a member of appellant's community or unit and never knew appellant long enough to form an opinion about him. The proffer was that he had met both appellant and his wife "approximately six times." These meetings at conferences would not have enabled him to testify as to appellant's good military character, truthfulness, or peacefulness. As to the pressure on a chaplain because of these accusations, that testimony was not necessary because it was cumulative with the proffered testimony of other witnesses.

The defense proffer as to Ms. Susan Breeding Herrin was not sufficient to show that her testimony was relevant and necessary. While she was raised with appellant and attended college with him, this was more than 20 years ago. The types of contact she had maintained since then were not sufficiently spelled out for us to hold that there was an abuse of discretion in not allowing her to testify.

The judge did not abuse his discretion in refusing to subpoena Doctor Gayle Dean, Jr., appellant's father-in-law. His knowledge concerning the interaction between appellant and his wife was based on spending 3 weeks with them more than 4 years earlier.

As to the last witness, Chris Smith, again a proper proffer was not made to establish the relevance and necessity of his testimony.

The judge recognized that there might be "further argument after I make my decision, because we're not talking about one or two witnesses here. But it would have to be very persuasive to change my mind." *Cf. United States v. Brannan,* 18 MJ 181 (CMA 1984); *United States v. Thomas,* 11 MJ 388, 392 (CMA 1981).

Even where witnesses are going to appear voluntarily, the judge serves as a gate keeper to ensure that their testimony is rele-

vant and not cumulative.* *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597, 113 S.Ct. 2786, 2798–99, 125 L.Ed.2d 469 (1993).

*United States v. Harmon*, 40 MJ 107, 108 (CMA 1994), recognized the constitutional right of the defense to call witnesses and to determine which witnesses they want to call. But we also recognized that the judge has discretion to determine which witnesses are cumulative and to exclude them.

 The character traits at issue in this case in terms of the excluded six witnesses concern appellant's good military character, peacefulness, truthfulness, and his wife's aggressiveness. We are satisfied that the proffered testimony of the six witnesses was cumulative with other witnesses at trial.

*Good Military Character.* Colonel (Chaplain) Rhyne, Pastor Rittenhouse, and Colonel (Chaplain) Singletary, testified at trial as to appellant's good military character.

The defense also requested First Lieutenant Gary Mitchell, Master Sergeant Dennis Murray, and Mr. Michael Greene to testify as to appellant's good military character. Mitchell and Greene were subpoenaed and testified on peacefulness but the defense did not ask about good military character, therefore waiving the issue.

As to *peacefulness*, Rhyne, Mitchell, Greene, and Barbara Morris testified as to appellant's peacefulness and all but Mitchell as to his wife's aggressiveness. A number of other witnesses also testified as to his wife's aggressiveness.

As to *truthfulness*, until there was a commitment that the defendant would testify, appellant's truthfulness was not in issue. In any event, evidence as to truthfulness is not relevant until a witness testifies and his or her credibility is attacked. *United States v. Robertson*, 39 MJ 211, 217 (CMA 1994); *United States v. Everage*, 19 MJ 189, 192–93 (CMA 1985). Thus, the defense would have had to renew their request for witnesses to testify as to truthfulness after the defendant testified. The defense did not do so.

In conclusion, we hold that the proffered testimony of the six excluded witnesses was insufficient to establish these witnesses as relevant and necessary.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Chief Judge COX, Judge GIERKE, and Senior Judge EVERETT concur.

SULLIVAN, Judge (concurring in the result):

I am unwilling to join the majority opinion because it leaves unanswered several significant Constitutional, Codal, and regulatory arguments presented in this case. In my view, appellant has asserted that he has a legal right to subpoena witnesses who may not be relevant and necessary *if* he proffers to pay witness fees and expenses. I would hold that he does not have such a right under the Constitution, the Uniform Code of Military Justice, or the Manual for Courts–Martial, United States, 1984. Otherwise, I agree that the military judge did not legally err in concluding that the defense-requested witnesses were not necessary in this case.

The granted issue in this case seems incomplete. It asks:

WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION BOTH BY DENYING CERTAIN DEFENSE REQUESTS FOR THE PRODUCTION OF CERTAIN WITNESSES AND BY PERSISTING IN HIS DENIAL OF SAID WITNESSES NOTWITHSTANDING THE WILLINGNESS OF THE DEFENSE TO RELIEVE THE PROSECUTION OF THE EXPENSES ASSOCIATED WITH THEIR APPEARANCE AT TRIAL, THEREBY DEPRIVING APPELLANT OF HIS SIXTH AMENDMENT RIGHT TO EQUAL OPPORTUNITY TO OBTAIN WITNESSES UNDER RCM 703.

---

* I suggest that the same rules will apply as to relevance and necessity when a witness appears voluntarily. But a trial counsel should willingly give the defense counsel a subpoena where the witness will appear voluntarily and needs the subpoena to assure an employer that he or she will be a witness.

A servicemember has the right to "compulsory process for obtaining witnesses in his favor" under the Sixth Amendment. He also has a right to due process of law as guaranteed by the Fifth Amendment. *See Weiss v. United States,* 510 U.S. 163, 177–78, 114 S.Ct. 752, 761, 127 L.Ed.2d 1 (1994). He also has a right to equal opportunity to obtain witnesses and other evidence in accordance with Presidential regulations under Article 46, UCMJ, 10 USC § 846. Whether RCM 703, Manual, *supra,* satisfies Article 46 and the Fifth and Sixth Amendments are distinct but related inquiries.

Appellant initially calls this Court's attention to Fed.R.Crim.P. 17(a) and (b), which state:

### Rule 17. Subpoena

**(a) For Attendance of Witnesses; Form; Issuance.** A subpoena shall be issued by the clerk under the seal of the court. It shall state the name of the court and the title, if any, of the proceeding, and shall command each person to whom it is directed to attend and give testimony at the time and place specified therein. The clerk shall issue a subpoena, signed and sealed but otherwise in blank to a party requesting it, who shall fill in the blanks before it is served. A subpoena shall be issued by a United States magistrate judge in a proceeding before that magistrate judge, but it need not be under the seal of the court.

**(b) Defendants Unable to Pay.** The court shall order at any time that a subpoena be issued for service on a named witness upon an *ex parte* application of a defendant upon a satisfactory showing that the defendant is financially unable to pay the fees of the witness and that the presence of the witness is necessary to an adequate defense. If the court orders the subpoena to be issued the costs incurred by the process and the fees of the witness so subpoenaed shall be paid in the same manner in which similar costs and fees are paid in case of a witness subpoenaed in behalf of the government.

He asserts that, under this rule, a defendant in Federal court may subpoena any person he wants as a witness without approval of the prosecutor or judge, if he will pay the required witness fees. *See* 2 Wright, *Federal Practice and Procedure: Criminal 2d* § 273 at 42 (1996 Pocket Part) ("Rule 17(a) does not provide for judicial screening of subpoenas issued under it before they are served.") A subpoena, however, is not the same as a court order or warrant compelling an appearance of a witness. *See United States v. Simpson,* 992 F.2d 1224, 1230 (D.C.Cir.1993).

In any event, he contrasts the federal civilian right with RCM 703, which states:

(c) *Determining which witness will be produced.*

(1) *Witnesses for the prosecution.* The trial counsel shall obtain the presence of witnesses whose testimony the trial counsel considers relevant and necessary for the prosecution.

(2) *Witnesses for the defense.*

(A) *Request.* The defense shall submit to the trial counsel a written list of witnesses whose production by the Government the defense requests.

(B) *Contents of request.*

(i) *Witnesses on merits or interlocutory questions.* A list of witnesses whose testimony the defense considers relevant and necessary on the merits or on an interlocutory question shall include the name, telephone number, if known, and address or location of the witness such that the witness can be found upon the exercise of due diligence and a synopsis of the expected testimony sufficient to show its relevance and necessity.

(ii) *Witnesses on sentencing.* A list of witnesses wanted for presentencing proceedings shall include the name, telephone number, if known, and address or location of the witness such that the witness can be found upon the exercise of due diligence, a synopsis of the testimony that it is expected the witness will give, and the reasons why the witness' personal appearance will be necessary under the standards set forth in RCM 1001(e).

(C) *Time of request.* A list of witnesses under this subsection shall be submitted in time reasonably to allow production of each witness on the date when the witness' presence will be necessary. The military judge may set a specific date by which such lists must be submitted. Failure to submit the name of a witness in a timely manner shall permit denial of a motion for production of the witness, but relief from such denial may be granted for good cause shown.

(D) *Determination.* The trial counsel shall arrange for the presence of any witness listed by the defense unless the trial counsel contends that the witness' production is not required under this rule. If the trial counsel contends that the witness' production is not required by this rule, the matter may be submitted to the military judge. If the military judge grants a motion for a witness, the trial counsel shall produce the witness or the proceedings shall be abated.

Appellant at trial challenged the constitutionality of RCM 703 on the basis of Fed. R.Crim.P. 17(a). He argued at trial:

In the federal system and in all state courts a criminal defendant can obtain the issuance of a subpoena without permission from the Court or the prosecution. For example, F.R.Cr.P. 17 directs the clerk of the court to issue a subpoena on the request of a party. If the witness who is subpoenaed does not wish to testify, he or she may file a motion to quash. If the prosecution does not believe the testimony of the witness is relevant, it may object to the testimony when it is offered; however, neither the government nor the witness can prevent the subpoena from being issued and served.

The military system prevents the accused from having subpoenas issued. The accused has a right to have subpoenas issued as he has requested; whether the government must pay for the witnesses to travel to Offutt Air Force Base for the trial is a different question and the two issues should not be confused. By allowing the government and the military judge to prevent a subpoena from being issued,

RCM 703 denies the accused his Sixth Amendment right to compulsory process. For this reason, RCM 703 should be declared unconstitutional, and the government should be ordered to subpoena all witnesses requested by the accused.

Before this Court appellant adopts a somewhat different approach. He asserts that RCM 703, properly construed, permits a military judge to issue a subpoena "if the defense was willing and able to take the financial responsibility for witness production." Final Brief at 19. I construe this argument as having two prongs: First–RCM 703 permits a military judge to issue a defense subpoena solely on the basis of a defense proffer to pay witness fees and expenses. Second-if RCM 703 is not so construed, it constitutes a violation of Article 46, his Fifth Amendment right to due process, and his Sixth Amendment right of compulsory process. The majority opinion overlooks these questions.

Turning first to RCM 703, I note that appellant has not proffered any authority directly supporting his broad reading of this Manual provision. Review of the plain language of this provision suggests that a military judge does not have authority to order a defense subpoena solely on the basis of a defense proffer of witness fees. *See* RCM 703(c)(2)(B)(i) (relevance and necessity). Accordingly, it is necessary to proceed to appellant's alternative arguments.

Turning next to Article 46, I would hold that RCM 703, construed in light of its plain language, does not violate this Codal provision, which states:

§ 846. Art. 46. **Opportunity to obtain witnesses and other evidence**

The trial counsel, the defense counsel, and the court-martial shall have equal opportunity to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe. Process issued in court-martial cases to compel witnesses to appear and testify and to compel the production of other evidence shall be similar to that which courts of the United States having criminal jurisdiction

may lawfully issue and shall run to any part of the United States, or the Territories, Commonwealths, and possessions.

Admittedly, RCM 703 permits trial counsel to issue his own subpoenas without immediate judicial supervision. RCM 703(e)(2)(c). However, RCM 703(b)(1) requires that both prosecution and defense requests for subpoenas be evaluated in terms of relevance and necessity. In addition it provides that a military judge ultimately resolves questions concerning particular government or defense subpoenas. In my view, Article 46 is satisfied.

Finally, I will address the constitutionality of RCM 703. Admittedly, RCM 703 establishes a different scheme of process than Fed.R.Crim.P. 17(a), at least with respect to witnesses which the defense tenders fees and expenses to. However, that fact alone does not establish a denial of due process. *See Weiss v. United States,* at 177–78, 114 S.Ct. at 761. Appellant must show that "the factors militating in favor" of a civilian procedure "are so extraordinarily weighty as to overcome the balance struck by Congress" in Article 46 and RCM 703. 510 U.S. at 177–78, 114 S.Ct. at 761, quoting *Middendorf v. Henry,* 425 U.S. 25, 44, 96 S.Ct. 1281, 1292, 47 L.Ed.2d 556 (1976). Appellant makes no argument on this critical Fifth Amendment question. In addition, I note that RCM 703 itself does not deny an accused the right to subpoena material and relevant witnesses as guaranteed by the Sixth Amendment. In fact, it simply allows for judicial review of denial of subpoenas on relevance and materiality grounds before they are enforced by court order. *Cf.* Fed.R.Crim.P. 17(c) and (d) (provisions for motion to quash and contest finding). In these circumstances I see no Sixth Amendment violation either. *United States v. Dean,* 55 F.3d 640, 662–63 (D.C.Cir. 1995); *United States v. Campbell,* 874 F.2d 838, 851 (1st Cir.1989); and *United States v. Bertoli,* 854 F.Supp. 975, 1082–84 (D.N.J. 1994).