UNITED STATES

v.

**Jorge L. RODRIGUEZ, Yeoman Third Class (E–4), U.S. Navy.**

**NMCM 9500776.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 17 Feb. 1994.

Decided 22 Nov. 2002.

LT Glenn Gerding, JAGC, USNR, Appellate Defense Counsel.

LT Deborah Mayer, JAGC, USNR, Appellate Government Counsel.

Before LEO, Chief Judge, RITTER, and FINNIE, Appellate Military Judges.

FINNIE, Senior Judge:

A general court-martial composed of officer and enlisted members convicted the appellant, contrary to his pleas, of attempting to transfer firearms unlawfully in interstate commerce, conspiring to deal in firearms without a license, desertion, failure to obey a general regulation, two specifications of deal-

ing firearms without a license, unlawfully transferring 24 handguns, and unlawfully possessing 19 handguns from which the manufacturer's serial numbers had been obliterated, in violation of Articles 80, 81, 85, 92, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 881, 885, 892, and 934. The court sentenced the appellant to confinement for 10 years, forfeiture of $200.00 pay per month for 60 months, reduction to pay grade E–1, and a bad-conduct discharge. The convening authority approved the adjudged sentence on 7 April 1995.

We have carefully reviewed the record of trial, the record of the *DuBay*[1] hearing, the appellant's nine assignments of error,[2] the Government's response, and the National Broadcasting Company's (NBC) *amicus curiae* memorandum. We conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the appellant's substantial rights was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

A recitation of the germane facts surrounding the appellant's apprehension, the procedural history of this case, and the evidence adduced at the *DuBay* hearing is useful to understanding the resolution of these issues. This background is set forth below.

The Bureau of Alcohol, Tobacco, and Firearms (ATF) initiated an investigation of the

---

1. *United States v. DuBay*, 17 C.M.A. 147, 37 C.M.R. 411, 1967 WL 4276 (1967).

2. I. STATE AND FEDERAL AGENTS SEIZED YN3 RODRIGUEZ WITHOUT AN ARREST WARRANT OR PROBABLE CAUSE WHEN THEY SURROUNDED HIS CAR AS HE DROVE ALONG THE INTERSTATE. THOUGH THE AGENTS MIGHT HAVE HAD REASONABLE SUSPICION SUFFICIENT FOR AN INVESTIGATORY STOP, THE MANNER IN WHICH THE AGENTS SEIZED YN3 RODRIGUEZ WAS UNREASONABLE IN ITS TIMING, EXECUTION, AND SCOPE. THE MILITARY JUDGE ERRED WHEN HE REFUSED TO SUPPRESS ALL EVIDENCE GAINED AS A RESULT OF THIS ILLEGAL SEIZURE.
II. AFTER THE MARYLAND STATE TROOPER CONCLUDED THE PURPOSE OF HIS TRAFFIC STOP OF YN3 RODRIGUEZ BY ISSUING HIM A CITATION, THE TROOPER'S CONTINUED DETENTION OF YN3 RODRIGUEZ AND "FISHING EXPEDITION" FOR UNRELATED CRIMINAL ACTIVITY WITHOUT PROBABLE CAUSE OR AN OBJECTIVE, REASONABLE SUSPICION DEVELOPED AT THE SCENE VIOLATED THE FOURTH AMENDMENT. THE MILITARY JUDGE SHOULD HAVE SUPPRESSED ALL EVIDENCE DERIVED FROM THIS ILLEGAL SEIZURE.
III. THE MARYLAND STATE TROOPER'S SEIZURE OF YN3 RODRIGUEZ ON THE SIDE OF I–95 BECAME AN ILLEGAL *DE FACTO* ARREST WHEN OVER TEN UNIFORMED ATF AGENTS SURROUNDED YN3 RODRIGUEZ AND HIS CAR AND YN3 RODRIGUEZ WAS NOT FREE TO LEAVE. THE MILITARY JUDGE ERRED IN NOT SUPPRESSING STATEMENTS YN3 RODRIGUEZ MADE TO ATF AND NCIS AGENTS AFTER THE *DE FACTO* ARREST.
IV. BECAUSE AGENT GRABMAN AND NCIS AGENTS JOINTLY SURVEILED YN3 RODRIGUEZ FOR TWO WEEKS, WORKED INTIMATELY TOGETHER INVESTIGATING YN3 RODRIGUEZ, AND COORDINATED EFFORTS ON 3 MAY 1991 TO SURVEIL, SEIZE, AND QUESTION YN3 RODRIGUEZ, ATF AGENT GRABMAN SHOULD HAVE INFORMED YN3 RODRIGUEZ OF HIS RIGHTS UNDER ARTICLE 31(b) BEFORE INTERROGATING HIM.
V. STATE AND FEDERAL AGENTS SEIZED YN3 RODRIGUEZ, THEN "MANUFACTURED" A TRAFFIC OFFENSE TO STOP HIM, IN ORDER TO SEARCH HIS CAR AND INTERROGATE HIM. THE AGENTS' CONDUCT WAS SO OUTRAGEOUS, FUNDAMENTALLY UNFAIR, AND SHOCKING TO THE CONSCIENCE THAT DUE PROCESS REQUIRES SUPPRESSION OF ALL EVIDENCE DERIVED FROM THE INCIDENT.
VI. YN3 RODRIGUEZ'S EVIDENTIARY (*DUBAY*) HEARING FAILED TO COMPLY WITH THE CONSTITUTION OF THE UNITED STATES, UNIFORM CODE OF MILITARY JUSTICE, OR RULES FOR COURTS–MARTIAL, TO THE SUBSTANTIAL PREJUDICE OF YN3 RODRIGUEZ.
VII. THE MILITARY JUDGE ERRED WHEN HE DENIED YN3 RODRIGUEZ'S MOTION TO ORDER NBC TO PRODUCE ITS VIDEO RECORDING OF THE GOVERNMENT'S SEIZURE, STOP, SEARCH, AND INTERROGATION OF YN3 RODRIGUEZ.
VIII. AN APPROVED SENTENCE OF CONFINEMENT FOR TEN YEARS, REDUCTION TO E–1, FORFEITURE OF $200.00 PAY PER MONTH FOR SIXTY MONTHS, AND A BAD CONDUCT DISCHARGE IS INAPPROPRIATELY SEVERE WHERE YN3 RODRIGUEZ HAD AN OTHERWISE SPOTLESS MILITARY RECORD, AND THE SENTENCE IS HIGHLY DISPARATE CONSIDERING YN3 RODRIGUEZ'S SENIOR COCONSPIRATOR RECEIVED AN EIGHT YEAR SENTENCE TO CONFINEMENT OF WHICH FOUR YEARS WERE SUSPENDED.
IX. THE CONVENING AUTHORITY'S ACTION FAILS TO INDICATE THE COMPANION CASE OF *UNITED STATES V. MOORE*.

appellant, in coordination with the Naval Investigative Service Command [3] (NIS), for the unlawful transfer of handguns. Although he was not a licensed dealer of firearms, the investigation revealed that during a 2–month period the appellant had purchased some 24 handguns. It appeared also that another Sailor, Yeoman First Class (YN1) Moore, was making "straw purchases" of guns for him so that the appellant's name would not appear on the gun purchase applications. On Friday, 3 May 1991, an informant advised the ATF and NIS that the appellant planned to drive to New York City.

Although Special Agent (SA) Grabman of the ATF believed he had enough evidence of illegal activity to stop and arrest the appellant at that time, he wanted to continue the investigation to try to identify other potential members of what he believed to be an interstate weapons transportation network. ATF and NIS agents followed the appellant's car in unmarked vehicles as he and three passengers drove north on Interstate–95 toward New York. Riding in an ATF vehicle was an NBC camera crew that ATF had contacted to film what the agents and news crew believed would be a newsworthy event.

ATF personnel decided to enlist the cooperation of the Maryland State Police in pulling the appellant over. After seeing the appellant's car pass his position, Maryland State Trooper Pearce followed him for about a minute, observed him tailgating a car in the fast lane, and pulled him over to the center median for "following too closely." After examining the appellant's license and registration and running a computer check, Trooper Pearce issued the appellant a warning citation. He then requested that the appellant consent to a "routine search" of his car for contraband. The appellant gave consent, in writing. Over the next 1 1/2 hours, Trooper Pearce, assisted by approximately ten ATF agents, conducted a thorough search of the appellant's car in the expectation of finding handguns.

Shortly after the search commenced, SA Grabman took the appellant aside and advised him of his *Miranda*[4] rights. After the appellant acknowledged his rights, SA Grabman questioned him about his purchases of handguns over the previous months. The appellant initially denied any wrongdoing. SA Grabman then reviewed details of his investigation and the extent of the Government's surveillance activities with the appellant. After hearing these specifics, the appellant stated, "You got me." SA Grabman then sought out two other agents to witness the appellant sign a form acknowledging his *Miranda* rights and several incriminating admissions that followed. SA Grabman then took the appellant into custody. Finding no contraband in the car, the Federal agents permitted the other members of the appellant's party to continue on their way to New York.

SA Grabman and SA Spigener of NIS interviewed the appellant. They advised the appellant of his rights under Article 31, UCMJ, 10 U.S.C. § 831, and *Miranda*. The appellant acknowledged his understanding of those rights in writing and executed a written statement that contained incriminating admissions. He also consented to various searches that uncovered handguns at several locations. The appellant admitted to having ground off the serial numbers from most of these guns.

The appellant made a motion before trial to suppress his oral and written statements and the other evidence acquired as a result of the traffic stop, subsequent questioning, and arrest. The appellant claimed that the warrantless stop was an unreasonable seizure under the Fourth Amendment and that anything which flowed from it should be suppressed. The appellant also asserted that the Government's show of force was so coercive as to prevent him from withdrawing his original consent to a search.

---

3. From 1988 to 1992 operated under the name Naval Investigative Service Command, until adoption of its current title Naval Criminal Investigative Service (NCIS).

4. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)(holding when an individual is taken into custody and subjected to questioning, procedural protections are required to protect the privilege against self-incrimination of the U.S. Constitution).

In support of the pretrial motion to suppress his statements, the appellant sought all NBC videotape of his traffic stop. At the request of the trial defense counsel, the Government delivered a subpoena to NBC's Washington Legal Counsel dated 21 February 1992 for: "NBC VIDEOTAPE OF A TRAFFIC STOP OF JORGE RODRIGUEZ BY AGENTS OF THE BUREAU OF ALCOHOL TOBACCO & FIREARMS SHOT ON MAY 3, 1991 ALONG I–95 IN MARYLAND. VIDEO WAS SEEN ON NBC NIGHTLY NEWS. JIM POLK WAS THE REPORTER" and a subpoena dated 28 February 1992 for: "All NBC recordings, video, audio or written produce [sic] between 17 Feb 91 and 8 May 91 involving the purchase, sale or transport of firearms which may relate to YN1 Jorge Rodriguez." In response, NBC provided a videotape copy of the broadcast material of the traffic stop. However, in a written response of March 5, 1992, NBC's counsel informed the Government that NBC had honored the request for broadcast material, but relied on its First Amendment newsgathering privilege regarding production of the videotape "outtakes" and reporter notes.

The trial defense counsel requested that the military judge compel the Government to enforce the subpoena to produce any remaining NBC videotape. In the alternative, the appellant requested that the case be dismissed or continued. Appellate Exhibit II at ¶ 8. In response to the appellant's motion to compel discovery, the Government served a third subpoena on NBC dated 25 January 1994 requesting the same material as the subpoena dated 28 February 1992.[5] In a response dated January 26, 1994, NBC again referenced its earlier response and the First Amendment newsgathering privilege.

The military judge denied the trial defense counsel's motion to compel discovery. In brief, the trial court's rationale was that there was already adequate evidence before the court, and any additional NBC outtakes would not be more enlightening than the

segment already provided to the court regarding the voluntariness issue associated with the appellant's motion to suppress. Record at 250–51; Appellate Exhibit XXII. The other motions were resolved against the appellant and the court-martial proceeded, resulting in his conviction.

When this case was initially before us, we affirmed the findings and sentence. *United States v. Rodriguez,* 44 M.J. 766 (N.M.Ct. Crim.App.1996). The U.S. Court of Appeals for the Armed Forces (CAAF) set aside that initial decision. *United States v. Rodriguez,* 50 M.J. 38 (1998). In its order, the CAAF directed that a fact-finding hearing pursuant to *United States v. DuBay* be conducted: "(1) to fully develop the record on the issue of the news media's refusal to comply with the federal subpoena issued for the videotape requested by the defense in this case, (2) to establish the availability of the videotape for production and inspection, and (3) to address the applicability, if any, of a news-gathering privilege." *Id.*

The *DuBay* hearing was held on 6 November 1998, 12 May 1999, 5 October 1999, and 7 January 2000. At the *DuBay* hearing, NBC was granted permission to file a memorandum and supporting material as *amicus curiae.* NBC indicated that they routinely discard any videotape outtakes in the ordinary course of business and in the absence of a request by the litigants or trial court to retain the videotape. Thus, the outtakes no longer existed. With this recitation of pertinent facts, we turn now to a legal analysis of appellant's assignments of error.

### Compulsory Process

The appellant contends that the military judge erred by denying his motion to order NBC to produce all videotape recording of the Government's stop, search, and interrogation. Therefore, he claims violations of his constitutional rights under the Fifth and Sixth Amendments to the Constitution and under Article 46, UCMJ, 10 U.S.C. § 846. Appellant's Brief of 20 Apr 2001 at 54–55.[6]

---

5. After arraignment at the appellant's first trial in 1992, he absented himself without authority from 19 March 1992 through 24 August 1993, which was the basis for Charge III, a violation of

Article 85, UCMJ, of which the members found the appellant guilty.

6. The appellant incorporates by reference the Appellant's Brief of 13 November 1997 at 16

Each party to a court-martial is entitled to an "equal opportunity to obtain witnesses and other evidence." Art. 46, UCMJ. Rule for Courts-Martial 703(a), Manual for Courts-Martial, United States (1984 ed.) establishes that the opportunity to obtain witnesses and evidence includes the benefit of compulsory process. The Government may obtain by subpoena evidence that is not under its control. R.C.M. 703(f)(4)(B).

" 'The subpoena *duces tecum*, an ancient writ well known to the common law, is the process by which a court requires the production at the trial of documents, papers, or chattels material to the issue.' " *United States v. Wooten*, 34 M.J. 141, 144, n. 1 (C.M.A.1992)(quoting *Vaughan v. Broadfoot*, 267 N.C. 691, 149 S.E.2d 37, 40 (1966)). In simple legal parlance, a subpoena *duces tecum* is an order for a witness to appear and to bring specified documents or records. Black's Law Dictionary 1440 (7th ed.1999). Although the subpoena power resides in the Government, each party is entitled to compulsory process for the production of evidence. R.C.M. 703(f)(1).

■ In the case at bar, resolving the issue requires application of R.C.M. 703 to a defense request for enforcement of subpoena *duces tecum*. The issue is in virtually every respect identical to a request for the production of a witness. In *United States v. Breeding*, 44 M.J. 345 (1996), our superior Court provided guidance for appellate review of requests for the production of witnesses. " 'The standard of review for rulings denying requests for production of witnesses is abuse of discretion.' " *Breeding*, 44 M.J. at 349 (quoting *United States v. Reveles*, 41 M.J. 388, 393–94 (1995)). Accordingly, consistent with the CAAF's guidance in *Breeding*, we review the military judge's decision on the issue of enforcement of a subpoena *duces tecum* for an abuse of discretion. *See also United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)(holding enforcement of a pretrial subpoena *duces tecum* must be committed to the sound discretion of the trial courts); *United States v. Dent*, 149 F.3d 180, 191 (3d Cir.1998)(holding

before the U.S. Court of Appeals for the Armed Forces and Appellant's Brief of 14 December

district court's denial of defendant's motion for subpoena reviewed for abuse of discretion); *United States v. Arditti*, 955 F.2d 331, 345 (5th Cir.1992)(holding grant of motion to quash a subpoena reviewed for abuse of discretion).

■ An abuse of discretion means the military judge's decision was arbitrary, fanciful, clearly unreasonable, or clearly erroneous. An abuse of discretion arises when the judge's decision is not based on the evidence or controlled by an error of law. *United States v. Travers*, 25 M.J. 61, 62–63 (C.M.A. 1987). We do not find an abuse of discretion in the military judge's determination.

■ We will uphold a military judge's findings of fact unless they are clearly erroneous or unsupported by the record. *See United States v. Paaluhi*, 50 M.J. 782, 785–86 (N.M.Ct.Crim.App.1999)(citing *United States v. Meeks*, 41 M.J. 150, 161 (C.M.A. 1994) *rev'd on other grounds*, 54 M.J. 181 (2000)). We review the conclusions of law *de novo*. *Paaluhi*, 50 M.J. at 786. Except as noted below in this decision, we adopt the military judge's detailed essential findings of fact at the court-martial as our own. We include those findings here to summarize the facts of this matter.

First, I find the evidence establishes that NBC videotaped various aspects of the traffic stop of Petty Officer Rodriguez' vehicle on 3 May 91; that efforts have been made to obtain full copies of that video tape from NBC through subpoena, but NBC has declined to give over such materials based on that subpoena.

Two, the evidence does not establish that there exists an agency relationship between the BATF and NBC, such that the government can claim ownership of the tapes and be required to produce them. Rather, the evidence only shows that the government agency, that is the BATF, allowed NBC to film its activities, and the government would not, therefore, have a possessory interests [sic] in the video.

Three, under R.C.M. 703(f)(1) and (2), each party is entitled to the production of

1995 at 22 before this Court, both of which argued his right to enforcement of the subpoena.

evidence which is relevant and necessary, but is not entitled to the production of evidence which is destroyed, lost, or not otherwise subject to compulsory process. The position of NBC is that this evidence is not subject to compulsory process because it is constitutionally protected. They do not assert that it does not exist.

Four, the authority of the military judge to assist with production of the unavailable evidence is spelled out in R.C.M. 703(f)(2). This presupposes a finding that the evidence is of such central importance to an issue that it is essential to a fair trial and there is no adequate substitute for the evidence.

Five, the defense argues that the entire video tape, not just the portion already viewed here in court, is relevant evidence on the question of the voluntariness of statements made to Agent Grabman. Certainly, the necessity of properly resolving the issue of the voluntariness of those admissions is essential to a fair trial, however, the video tape is not of central importance to that issue. Rather it is of little or no importance to that question. The testimony before the court on the motion to suppress the admissions, which I choose to migrate over to the motion to compel discovery, establishes that the video crew was focused on the conduct of the search. Testimony also establishes that discussions between Agent Grabman and Petty Officer Rodriguez, and between other ATF agents and Petty Officer Rodriguez, took place some distance away from where the search was taking place. The testimony does not establish that matters relating to the voluntariness issue were even video taped at all, particularly the actual discussions between Petty Officer Rodriguez and the ATF agents.

Six, the evidentiary value of that portion of the video that NBC did provide, now before the court as an appellate exhibit, is negligible in deciding the motion to suppress.

Seven, there is adequate testimony of witnesses at the scene, and I include here the objective testimony of Ms. Soto [aunt of the appellant's daughter], that can serve as a substitute for the video even if it were central to the issue of voluntariness of the admissions.

Eight, I conclude that the entire video tape is unnecessary to fairly resolve the issues before the court in connection with the suppression motion.

Record at 250–51. After announcing his findings, the military judge then denied the motion to compel discovery of the videotape or to grant other relief.

We begin our analysis of the military judge's determination with the findings of fact. To the extent that finding of fact number one states, "NBC declined to give over materials based on the subpoena" the record did not support this. NBC's response dated March 5, 1992, while citing cases in support of its First Amendment newsgathering privilege, closed with "I hope that the production of the broadcast material will satisfy your needs, and assume that I will hear from you if you intend to pursue this matter." Appellate Exhibit VII. Almost two years later NBC was provided another subpoena dated 25 January 1994. In a response dated January 26, 1994, NBC, in a manner similar to the earlier response, replied, "I hope that the broadcast material produced earlier will satisfy your needs, and I assume that I will hear from you if you intend to pursue this matter further. If you do decide to pursue this further, I would appreciate as much advance notice as possible so that I may refer this matter to and discuss it with our outside First Amendment counsel." Appellate Exhibit IV. NBC's responses were attached to the Government's answer to the defense motion to compel discovery. The parties later stipulated to the facts as represented in their respective motion and answer before the trial court concerning the motion to compel discovery.

The Government's answer stated NBC "refused to comply with the subpoenas." Appellate Exhibit III at ¶ 2. All parties to the trial proceeded with that understanding. Although NBC's response claimed a privilege, the letter on its face was not a clear refusal

to comply.[7] Neither party established at trial that the Government responded to NBC's letter of January 26, 1994 in any fashion. Clearly, this would be a condition precedent to a finding that NBC declined to comply with a Federal subpoena.

A person subpoenaed may request relief on grounds that compliance is unreasonable or oppressive. R.C.M. 703(e)(2)(F). Relief may be requested from the convening authority or, after referral, the military judge who may direct that the subpoena be modified or withdrawn. *Id.* Plainly, NBC's response can be viewed as a request for relief from the subpoena. In fact, the trial counsel filed an answer to the trial defense counsel's motion to compel discovery with the trial court on 27 January 1994, the day after receiving NBC's response. The Government's answer was, in essence, a motion to quash the subpoena. Consequently, the finding of fact that NBC declined to comply with a Federal subpoena is not supported by the record.

Turning to the appellant's argument for enforcement of the subpoena, he asserted at trial and on appeal that the NBC videotape outtakes that the military judge refused to order produced were the best evidence concerning whether the Government committed any constitutional violations during the traffic stop. However, he has offered nothing in support of his position. Moreover, the appellant has failed to demonstrate that the requested evidence was both relevant and necessary.

A party's right to evidence is not without limits. "Each party is entitled to the production of evidence which is relevant and necessary." R.C.M. 703(f)(1). Military Rule of Evidence 401, Manual for Courts-Martial, United States (1984 ed.) defines relevant evidence as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the ac-

tion more probable or less probable than it would be without the evidence." Relevant evidence is "necessary when it is not cumulative and when it would contribute to a party's presentation of the case in some positive way on a matter in issue." R.C.M. 703(f)(1), Discussion.

The appellant speculates that the videotape would have included information that supports his position. In fact, the trial defense counsel made no averment how the outtakes would have been material to the determination of any of the critical issues. The appellant has failed to explain in any meaningful way how the outtakes would have been qualitatively different from the broadcast version of the videotape already provided by NBC.

Applying the legal standards previously discussed, the military judge was well within his discretion to determine that the defense proffer was insufficient and deny the motion to compel production of the NBC videotape outtakes.[8] Even assuming that the evidence was relevant, the outtakes were never established as necessary. The videotape outtakes were neither necessary nor clearly of central importance and essential to a fair trial on the issue of voluntariness. R.C.M. 703(f). After viewing videotape of the broadcast version of events, the military judge determined that the videotaping did not focus on the appellant's questioning. Further, the military judge considered the testimony of several witnesses to the actual events. As a result, the military judge found that the evidence contained in the videotape outtakes, even if it was relevant to an issue in the case, was unnecessary and cumulative. Record at 250–51. We are satisfied that the military judge's ruling was supported by the evidence on the record and correctly applied the legal standard. Accordingly, we conclude the military judge did not abuse his discretion in

---

7. We note NBC's counsel at the *DuBay* hearing characterized the letters as "assertion of the privilege." Record of *DuBay* hearing at 38–39.

8. A better practice would be for the military judge to inspect the item *in camera*. *See United States v. Briggs*, 48 M.J. 143, 145 (1998)(holding the preferred practice is for the military judge to

inspect medical records *in camera* to determine whether any exculpatory evidence was contained). NBC's counsel, at the *DuBay* hearing, indicated that in an ordinary circumstance they would make a motion to quash the subpoena, but would produce any videotape in question for the litigation. Record of *DuBay* hearing at 37.

quashing the subpoena, or declining to grant a continuance or other relief.

We have considered also the results of the *DuBay* hearing with its attached documentation, and the hearing officer's findings of fact and conclusions of law. NBC provided an affidavit of Mr. Polk, the NBC news correspondent, and Mr. Gibson, the videographer. Mr. Gibson stated he did not obtain videotape footage of any communication between the appellant and law enforcement officials. Furthermore, Mr. Polk stated that any footage of any statements by the appellant would certainly have been considered for inclusion in the final edited news report had they existed. This evidence provides additional support for the propriety of the military judge's resolution of the matter concerning the subpoena. The evidence of the *DuBay* hearing further supports the military judge's findings and ruling that the videotape outtakes were unlikely to offer any material evidence of consequence to the determination of the motion to suppress.

Finally, while the appellant has an equal opportunity to benefit from compulsory process, a subpoena is not intended to be a means of discovery. *See Bowman Dairy v. United States*, 341 U.S. 214, 220, 71 S.Ct. 675, 95 L.Ed. 879 (1951)(subpoena *duces tecum* not intended to provide additional means of discovery). A party is entitled to compulsory process for the production of relevant and necessary evidence. The appellant failed to demonstrate that the NBC videotape outtakes were relevant and necessary. Accordingly, this assignment of error is without merit.

Our earlier opinion, since set aside, implied that NBC would have prevailed on a newsgathering privilege. We need not revisit that issue. We agree with the military judge's finding at the *DuBay* hearing that the original court-martial did not litigate and rule on whether there was a newsgathering privilege applicable to courts-martial. Consequently, consideration of the newsgathering privilege was not applied in the case at the trial level.

## Denial of Motion to Suppress

The appellant's current assignments of error I, II, III, and V restate his earlier claim before this Court that the military judge committed error in failing to grant the defense motion to suppress the evidence as a result of the his stop on the interstate by a Maryland state trooper. Assignment of error IV merely restates his previous claim that Article 31(b), UCMJ, advice was required as a result of SA Grabman acting in coordination with agents of NIS. After carefully reviewing these matters again,[9] we decline to afford the appellant relief for the reasons contained in our earlier opinion. *Rodriguez*, 44 M.J. at 766–76.

## Sentence Appropriateness

The appellant also contends that his sentence to confinement for 10 years is inappropriately severe in light of his unblemished military record, particularly when compared to the punishment received by YN1 Moore. The appellant asserts that YN1 Moore, his work supervisor, admitted to engaging in a criminal enterprise with the appellant, his military subordinate, and received a lesser sentence of a dishonorable discharge, total forfeiture, reduction to E–1, and confinement for a period of 8 years. Furthermore, YN1 Moore's pretrial agreement required that any confinement over 5 years be suspended; however, the convening authority, in an exercise of clemency, suspended all confinement in excess of 4 years. Consequently, the appellant asks that we reduce his sentence to confinement for 4 years, forfeiture of $200.00 pay per month for 48 months, reduction to E–1 and a bad-conduct discharge. Appellant's Brief of 20 Apr 2001 at 55–56. We decline to grant the relief requested.

9. On remand, "a Court of Criminal Appeals 'can only take action that conforms to the limitations and conditions prescribed by the remand.'" *United States v. Riley*, 55 M.J. 185, 188 (2001)(quoting *United States v. Montesinos*, 28 M.J. 38, 44 (C.M.A.1989)); *see also United States v. Jordan*, 35 M.J. 856, 861 n. 7 (N.M.C.M.R.1992)(countermanding grant of motion to raise supplemental assignments of error because assignments of error beyond scope of remand). The appellant's request to consider other assignments of error was beyond the scope of our limited authority on remand to review. However, assuming *arguendo* that our reading of the decision of our superior Court is too narrow and that these supplemental claims can be reviewed, we considered them and found them to be without merit.

Sentence comparison is required in those instances of highly disparate sentences in closely related cases. *United States v. Lacy*, 50 M.J. 286, 288 (1999); *United States v. Olinger*, 12 M.J. 458, 460 (C.M.A.1982). To be closely related, "the cases must involve offenses that are similar in both nature and seriousness or which arise from a common scheme or design." *United States v. Kelly*, 40 M.J. 558, 570 (N.M.C.M.R.1994). Where we find sentences highly disparate in closely related cases, we must determine whether there is a rational basis for the differences between the sentences.

We find that these two courts-martial are closely related cases. We also find that the sentences are not highly disparate. Even if the sentences are viewed as highly disparate, we find that there is a rational basis for the disparity.

When sentences are highly disparate, the appellant may only be entitled to relief if the Government cannot demonstrate "a rational basis for the disparity," *Lacy*, 50 M.J. at 288, or, provide "good and cogent reasons" for the disparity. *Kelly*, 40 M.J. at 570. After reviewing all the evidence, we find good and cogent reasons for the disparity in this case. First, it is clear from the record of trial that the appellant was the primary actor in this illegal enterprise to buy and resell handguns on the criminal market. Second, the appellant was convicted of offenses beyond those of which YN1 Moore was convicted. The members found that the appellant, unlike his co-actor, had deserted the Navy in violation of Article 85, UCMJ, while charges were pending against him. Third, YN1 Moore was credited for the fact that he pled guilty and cooperated by testifying in the appellant's case. Given these facts, it is not surprising that YN1 Moore received less punishment in terms of confinement than the appellant did.

"Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves." *United States v. Healy*, 26 M.J. 394, 395 (C.M.A.1988). This requires "individualized consideration" based on the "nature and seriousness of the offense[s] and the character of the offender." *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A.1982). We have carefully weighed the matters the appellant brought to our attention to include his record of military performance and the absence of any prior offenses. Nonetheless, the appellant engaged, *inter alia*, in a calculated criminal enterprise to transfer untraceable firearms. His misconduct is among the more serious that this Court has had occasion to consider. The crimes committed justified the imposition of severe punishment. We do not find the appellant's sentence to be inappropriately severe. Art. 66(c), UCMJ.

We have considered the remaining assignments of error and find them to be without merit of further discussion.[10]

### Conclusion

Accordingly, we affirm the findings and sentence, as approved on review below.

Chief Judge LEO and Judge RITTER concur.

10. VI. YN3 RODRIGUEZ'S EVIDENTIARY (*DUBAY*) HEARING FAILED TO COMPLY WITH THE CONSTITUTION OF THE UNITED STATES, UNIFORM CODE OF MILITARY JUSTICE, OR RULES FOR COURTS–MARTIAL, TO

THE SUBSTANTIAL PREJUDICE OF YN3 RODRIGUEZ.
IX. THE CONVENING AUTHORITY'S ACTION FAILS TO INDICATE THE COMPANION CASE OF UNITED STATES V. MOORE.